John Larry RAY, Appellant,

v.

Patricia PICKETT, J. Alan MacDoniel, U.S. Parole Commissioner, Appellees.

No. 82–2072.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1983.

Decided May 14, 1984.

Thomas E. Dittmeier, U.S. Atty., Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for appellees.

Francis E. Pennington, III, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellant.

Before HEANEY, ROSS and FAGG, Circuit Judges.

FAGG, Circuit Judge.

The sole issue presented in this appeal is the scope of immunity to be afforded federal probation officers in a constitutional damages suit arising from acts performed in their official capacities. John Larry Ray brought this action for damages against two federal probation officers who were supervising Ray's parole. Ray contends, among other things, that the probation officers violated his constitutional rights by intentionally falsifying a report to the United States Parole Commission on June 29, 1979, to secure a parole violator's warrant. The district court dismissed Ray's claim, holding that the probation officers were absolutely immune from liability because they were performing discretionary duties within the framework of an adjudicatory process. We reverse.

■ The Supreme Court has consistently held that government officials are entitled to some type of immunity from suits for damages. "[P]ublic officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Two types of immunity defenses have generally been recognized: absolute immunity and qualified immunity. Absolute immunity defeats a suit at the outset, provided that the official's actions are within the scope of the immunity. *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128 (1976). Qualified immunity is asserted as a defense, and shields government officials performing discretionary functions from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald, supra,* 457 U.S. at 818, 102 S.Ct. at 2738.

"[O]fficials whose special functions or constitutional status require[] complete protection from suit" are accorded absolute immunity. *Id.* at 807, 102 S.Ct. at 2732. Absolute immunity from suit has been accorded to judges, *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), prosecutors, *Imbler v. Pachtman, supra,* legislators, *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975), and to federal agency officials who perform adju-

dicatory or prosecutorial functions. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The Supreme Court has been cautious in extending the protection of absolute immunity, and has noted that "federal officials who seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope." *Id.* at 506, 98 S.Ct. at 2911.

The Supreme Court has provided that qualified immunity from damages liability is the general rule for executive officials charged with constitutional violations. *Id.* at 507, 98 S.Ct. at 2911. Qualified immunity is an attempted balance of the competing values of protecting individuals' constitutional rights and protecting officials who are required to exercise their discretion, in order to encourage the vigorous exercise of official authority. *Harlow v. Fitzgerald, supra*, 457 U.S. at 813–14, 102 S.Ct. at 2736; *Butz v. Economou, supra*, 438 U.S. at 506, 98 S.Ct. at 2910.

 Both the Supreme Court and this court have expressly reserved judgment on the question of what immunity, if any, a probation or parole officer has in a damages action where a constitutional violation is made out by the allegations. *See Martinez v. California*, 444 U.S. 277, 285 n. 11, 100 S.Ct. 553, 559 n. 11, 62 L.Ed.2d 481 (1980); *DeShields v. United States Parole Commission*, 593 F.2d 354, 356 (8th Cir. 1979); *Kelsey v. Minnesota*, 565 F.2d 503, 507 n. 4 (8th Cir.1977). In recent decisions, the Supreme Court has emphasized a "functional" approach to immunity law. *See Harlow v. Fitzgerald, supra*, 457 U.S. at 810, 102 S.Ct. at 2734. Thus, the scope of immunity accorded a particular official is not dependent upon his or her location within the government, but rather upon the special nature of the official's responsibilities. *See Butz v. Economou, supra*, 438 U.S. at 511–12, 98 S.Ct. at 2913–14. *See also Nixon v. Fitzgerald*, 457 U.S. 731, 744–48, 102 S.Ct. 2690, 2699–01, 73 L.Ed.2d 349 (1982). Under this approach, certain adjudicatory or prosecutorial functions of a probation officer may be entitled to absolute immunity, while other functions, more administrative, supervisory, or investigative in nature, may warrant only a qualified immunity. *See Harlow v. Fitzgerald, supra*, 457 U.S. at 811, 102 S.Ct. at 2735; *Briggs v. Goodwin*, 569 F.2d 10, 22–23 (D.C.Cir.1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978) (prosecutorial immunity extends to some, but not all, official functions).

We limit our inquiry to the immunity afforded a federal probation officer's action in filing a report with the United States Parole Commission to secure a parole violator's warrant. We must, then, examine the role played by the probation officer in the parole revocation process. If it appears that a parolee has violated the conditions of parole, it is the probation officer's function to submit a report concerning such an alleged violation to the parole commission. If satisfactory evidence of such a violation is presented, the commission may issue a summons requiring the offender to appear for a preliminary interview or local revocation hearing or issue a warrant for the return of the offender to custody. 28 C.F.R. § 2.44. Once a warrant has been issued, the parolee is afforded a preliminary interview before a probation officer, other than the officer who recommended that the warrant issue, to determine whether there is probable cause to believe that there is a violation of the parole as charged. 28 C.F.R. § 2.48. If the interviewing officer finds that there is probable cause for the warrant to issue and a revocation hearing is ordered, the parolee is afforded a revocation hearing before a hearing examiner or examiner panel, at which the parolee may present witnesses and documentary evidence on his behalf. 28 C.F.R. §§ 2.49–50. Finally, there is a provision for administrative review of the hearing examiner's decision with the National Appeals Board. 28 C.F.R. § 2.54. From these regulations it is clear that the reporting probation officer has no part in making the decision to initiate a parole revocation proceeding.

373

Our first task is to determine whether the described function of the probation officer is adjudicatory in nature, thus warranting an immunity similar to that afforded to judges. Several other courts have considered this issue. In *Burkes v. Callion*, 433 F.2d 318 (9th Cir.1970), *cert. denied*, 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971), the Ninth Circuit held that a state probation officer in preparing and submitting a presentence probation report in a criminal case was performing a judicially related function and was entitled to an immunity comparable to that accorded to judges in the exercise of their judicial duties. *Id.* 433 F.2d at 319. In *Spaulding v. Nielsen*, 599 F.2d 728 (5th Cir.1979), the Fifth Circuit held that a federal probation officer was entitled to absolute immunity in preparing and submitting a presentence report. The court noted that the presentence report was an integral part of the sentencing process and was prepared at the direction of the court. Therefore, the court concluded that this narrow function was "intimately associated with the judicial phase of the criminal process" and that probation officers should enjoy absolute immunity for activities "within this protected function." The court expressly reserved the decision of "whether immunity will shield probation officers from civil liability for official activities apart from the presentence report process." *Id.* at 729 n. 2. The Fifth Circuit has recently reaffirmed the absolute immunity of probation officers from damages liability in the presentence report process. *Maynard v. Havenstrite*, 727 F.2d 439, 441 (5th Cir.1984).

Despite the decision in *Spaulding*, the Fifth Circuit has accorded only qualified immunity to a state probation officer in a context closely analogous to the instant case. *See Galvan v. Garmon*, 710 F.2d 214 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2150, 80 L.Ed.2d 536, 35 Crim.L.Rep. 4021 (1984). In *Galvan*, the probation officer mistakenly believed that a probationer had been arrested for driving while intoxicated and unlawfully carrying a weapon. Based on this mistaken information, the officer prepared a motion to re-voke Galvan's probation, and an arrest warrant was issued. Galvan brought a section 1983 action, claiming that the probation officer had violated his constitutional rights by erroneously causing his arrest and incarceration. The court concluded that the probation officer was entitled only to qualified immunity. Particular emphasis was given to *Harlow v. Fitzgerald, supra*, in which the Supreme Court "noted that absolute immunity for judicial functions 'has extended no further than its justification would warrant.'" *Galvan v. Garmon, supra*, 710 F.2d at 215, *quoting Harlow v. Fitzgerald, supra*, 457 U.S. at 811, 102 S.Ct. at 2735. The Fifth Circuit in *Galvan* distinguished its earlier decision in *Spaulding*, noting that in *Spaulding* the probation officer was acting at the direction of the court during the presentence report process, whereas in *Galvan*, "the probation officer acted at her own initiative and at a different phase of the criminal process less intimately associated with the judiciary." *Galvan v. Garmon, supra*, 710 F.2d at 215. We observe that the Sixth Circuit also has accorded only qualified immunity to state parole officers in a section 1983 action. *See Wolfel v. Sanborn*, 691 F.2d 270 (6th Cir.1982), *cert. denied*, 459 U.S. 1115, 103 S.Ct. 751, 74 L.Ed.2d 969 (1983). We find *Wolfel* inapplicable here, however, because the conduct complained of in that case was significantly different: the parole officers' post-arrest imprisonment of the plaintiff without holding a timely probable cause hearing as required by *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

■ We agree with the Fifth Circuit in *Galvan* that a probation officer does not perform an adjudicatory function by filing a report with the parole commission. The effect of filing such a report is merely to trigger an inquiry by another officer that may or may not lead to an administrative proceeding. The probation officer is not acting as closely with the court as in the presentence report process. We cannot conclude that this function is so intimately associated with the judicial process that it entitles probation officers to an absolute immunity.

A somewhat more persuasive reason for granting absolute immunity to probation officers in this context, and one not considered by the Fifth Circuit in *Galvan*, is that by filing a report with the parole commission, the probation officer is acting in a capacity that is functionally comparable to that of a prosecutor in deciding to initiate a criminal prosecution. *See Anderson v. New York State Division of Parole*, 546 F.Supp. 816, 824–25 (S.D.N.Y.1982).

At common law, a prosecutor was absolutely immune from liability in a civil suit arising out of the performance of the prosecutor's public duties. *See Yaselli v. Goff*, 12 F.2d 396 (2d Cir.1926), *aff'd*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927) (per curiam). In *Imbler v. Pachtman, supra*, 424 U.S. at 423, 96 S.Ct. at 991, the Supreme Court decided that policy considerations dictated absolute prosecutorial immunity from liability under section 1983:

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.

*Id.* at 424, 96 S.Ct. at 992. The *Imbler* Court limited its holding concerning absolute immunity to the prosecutor's role in initiating a prosecution and in presenting the government's case. The Court expressly declined to decide whether absolute immunity applies to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.* at 430–31, 96 S.Ct. at 994–95.

In *Butz v. Economou, supra*, 438 U.S. at 478, 98 S.Ct. at 2894, the Supreme Court granted absolute immunity to officials of the Department of Agriculture whose duties were functionally comparable to those of prosecutors:

> [A]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought.

*Id.* at 515, 98 S.Ct. at 2915. The Court concluded that the discretion which the agency officials exercise concerning the initiation of administrative proceedings risked being distorted if the officials' immunity from damages "was less than complete." *Id.*

We do not find present in this case the same policy concerns that prompted absolute immunity for the agency officials in *Butz*. We cannot conclude that the probation officer, in filing a parole violation report, exercises the same degree of discretion as a prosecutor in initiating a criminal prosecution or as the agency officials in *Butz*. Unlike the decision made by the prosecutor, the report of the probation officer is subject to review by the parole commission or one of its members, who then decide whether a summons or warrant can issue. Although the probation officer's report triggers an investigative process, only the parole commission or one of its members, not a probation officer, can decide whether a parolee should be required to appear for an administrative proceeding. We believe that the probation officer's function in this context is more akin to that of a police officer in deciding whether there is probable cause for an arrest than it is to that of a prosecutor in deciding whether to initiate a prosecution. Police officers have never been granted an absolute immunity in making the decision to arrest. *See Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967); *Harris v. Pirch*, 677 F.2d 681, 686 (8th Cir.1982).

In sum, we do not find that the function of a probation officer in submitting a parole violation report is either adjudicatory or prosecutorial in nature. Neither do we find a compelling policy rationale for extending absolute immunity to probation officers in this context. We do believe, however, that probation officers should be ac-

corded a qualified immunity from liability, and on remand, the district court should consider the allegations concerning the falsification of a parole violation report under this standard, should qualified immunity be pleaded.

Finally, we observe that there are a variety of other allegations in the complaint concerning a conspiracy to upgrade charges against Ray, and to suppress Ray's exculpatory evidence. Ray also alleges that probation officer Pickett conspired to deny him certain constitutional rights with respect to the conditions of his confinement. We have tried unsuccessfully to decipher these allegations; they are simply so vague and confusing that we are unable to make any ruling concerning the immunity of the defendants from these alleged constitutional violations. On remand, the district court should consider these allegations, but will no doubt want to require that the pleadings be recast in clearer and more specific language.

Reversed.