**David Francis CHITTY**

v.

**James A. WALTON, Richard Turner, Joan Alexander, Michael Dooley, John Cannon, David Bellini and Patty Cook.**

**David F. CHITTY**

v.

**James A. WALTON, Richard Turner, Bill Anderson, Joan Alexander, Tom Lamson, David Bellini, John Hanson and Steve Brooks.**

**Civ. Nos. 84–173, 84–248.**

United States District Court, D. Vermont.

April 15, 1987.

---

Michele Ferland, Prisoner's Rights Office, Montpelier, Vt., for plaintiff.

Joanna Mauer, Asst. Atty. Gen., Dept. of Corrections, Waterbury, Vt., for defendants.

## OPINION AND ORDER

COFFRIN, Chief Judge.

These consolidated cases were brought against several state prison employees under 42 U.S.C. § 1983 by plaintiff, an inmate at the Chittenden Community Correctional Facility ("CCCF"). Plaintiff seeks money damages for a variety of alleged constitutional claims. Specifically, plaintiff alleged that his constitutional rights were violated (a) by the failure of prison guards Bellini and Turner to protect him from the threats of other inmates, (b) by defendants' Alexander and Dooley intentional submission of false information concerning plaintiff to the Vermont Parole Board, (c) by defendants' failure to call plaintiff's requested witness at plaintiff's prison disciplinary hearing, (d) by defendants' conduct surrounding plaintiff's six-hour administrative segregation and (e) by defendants' use of urinalysis testing results in plaintiff's prison disciplinary proceeding. Defendants filed motions for summary judgment on all counts. Defendants' motions were re-ferred to the magistrate, who in his report and recommendation recommended that we deny defendants' motions with respect to claims (a), (b) and (c) and grant defendants' motions with respect to claims (d) and (e).

Defendants Alexander and Dooley filed objections regarding claim (b) to that portion of the magistrate's report in which the magistrate rejected defendants' argument that they were entitled to absolute immunity for their actions in submitting information regarding plaintiff to the Vermont Parole Board. For the following reasons we decline to adopt the magistrate's recommendations on this issue. Since no other timely objections to the magistrate's report have been filed, we do adopt the magistrate's other recommended findings regarding plaintiff's other claims.

## I. FACTUAL BACKGROUND

The claim in issue on this de novo review arose out of the denial of plaintiff's parole request by the Vermont Parole Board in December of 1983. Among the materials considered by the Parole Board when it denied plaintiff's parole request was a parole report prepared by defendants' Alexander and Dooley.

Alexander was the supervisor of the caseworkers at CCCF in 1983. Her main duties involved overseeing the organization and delivery of counselling and casework services to inmates at CCCF and managing the caseworker staff. With the help of Dooley, a state parole officer, Alexander prepared plaintiff's 1983 parole report for use by the Parole Board because plaintiff's regular caseworker had recently left the Department of Corrections. This parole report addressed plaintiff's past history and performance during the period of incarceration and included a recommendation concerning the inmate's suitability for parole. The report was prepared pursuant to a procedure in 1983 under which the caseworker customarily wrote the report after discussion with the parole officer. In plaintiff's December 1983 parole report defendants recommended that plaintiff be denied parole. In the report defendants indicated

that plaintiff had a poor attendance record at prison programs. Plaintiff alleges that this statement was false and that Alexander and Dooley violated plaintiff's due process rights by intentionally misrepresenting this fact to the Vermont Parole Board.

## II. DISCUSSION

■ Upon the timely filing of objections to the magistrate's report, we are required to conduct a de novo review of those portions of the report to which the parties object, and to accept, reject or modify the findings and recommendations of the magistrate. 28 U.S.C. § 636(b)(1)(B); Rule 1, subd. D(II), Local Rules for U.S. Magistrate, U.S. Dist. Court for the Dist. of Vt. Defendants here object to the magistrate's refusal to find that a parole officer and caseworker are entitled to absolute immunity for their conduct in preparing a report for the parole board on an inmate's suitability for parole.

■ The Supreme Court has embraced a "functional" approach to immunity law. Under this approach:

"[I]mmunity analysis rests on functional categories, not on the status of the defendant". *Briscoe v. La Hue*, 460 U.S. [325, 342, 103 S.Ct. 1108, 1119, 75 L.Ed. 2d 96 (1983)]. Absolute immunity flows not from rank or title or "location within the government", *Butz v. Economou*, 438 U.S. [478, 511, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978)], but from the nature of the responsibilities of the individual official.

*Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985). While the Court has recognized that the judicial, prosecutorial and legislative functions require absolute immunity, because such immunity erects an impenetrable shield from liability, absolute immunity is available only to the extent that its justification will warrant. *Harlow v. Fitzgerald*, 457 U.S. 800, 811, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982).

Defendants base their absolute immunity claim upon a line of cases which granted such immunity to parole board members for their actions in granting, denying or revoking parole. *See e.g., Evans v. Dillahunty*, 711 F.2d 828, 830–31 (8th Cir.1983); *Sellars v. Procunier*, 641 F.2d 1295, 1301–03 (9th Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981); *DeShields v. U.S. Parole Commission*, 593 F.2d 354, 356 (8th Cir.1979); *see also, Walker v. Prisoner Review Board*, 769 F.2d 396, 399 (7th Cir.1985), *cert. denied*, 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 791 (1986). Under the functional approach to immunity, we find that these cases are not directly applicable to the case at bar. The parole officers in these cases were acting in their "quasi-judicial" capacities as their roles were " 'functionally comparable' to that of a judge". *Butz*, 438 U.S. at 513, 98 S.Ct. at 2914. Like a judge, parole board members ruling upon a parole request must evaluate the relevant information and standards and make a binding decision with important consequences to the offender and to society. By contrast Alexander and Dooley were not the persons responsible for "adjudicating" plaintiff's parole request. The actual decision whether or not to grant plaintiff parole rested with the parole board and not Alexander and Dooley.

The magistrate noted this distinction when he found that defendants acted in an "investigative" role when they prepared a report at the parole board's request for the board's use. Because he found that the defendants performed an "investigative" rather than an "adjudicatory" function regarding plaintiff's parole request, the magistrate concluded that defendants were only entitled to qualified immunity, relying upon *Ray v. Pickett*, 734 F.2d 370, 372–74 (8th Cir.1984). In *Ray*, the Eighth Circuit ruled that a parole officer who allegedly filed an intentionally false parole violation report to secure a parole violator's warrant was entitled to qualified, and not absolute, immunity. The parole officer's role in *Ray* under the federal parole regulations was to report violations, which in turn might or might not trigger parole revocation proceedings.

Although this case presents a close question, we conclude somewhat uneasily that defendants' conduct fell on the "quasi-judicial"

rather than "investigative" side of the boundary separating conduct entitled to absolute rather than qualified protection. In reaching this decision we are aided by supplemental material concerning defendants' role in the parole review process, as provided by the parties subsequent to the magistrate's ruling. This material shows that in 1983 the Vermont Parole Board had adopted a format for preparation of parole reports to provide a standard method for submitting written information to the Parole Board for its consideration in ruling on parole requests. Affidavit of John F. Gorczyk, ¶ 11, and attachment to affidavit, "Format For Preparation of Parole Packet" (the "Format"), p. 1. The parole officer and corrections counselor assigned to the parole candidate were responsible for the preparation of these reports. Under the format established by the Parole Board, these required reports contained sections regarding the details of the offense, the prior presentence investigation, the inmate's conviction record, prior psychiatric and psychological evaluations, case assessment, case planning and progress, a proposed parole plan, and a recommendation of the inmate's suitability for parole. *Id.*, Format at pp. 3–6.

Thus we agree with defendants that their duties in preparing the parole report were similar to those made by probation officers when investigating and submitting presentence recommendations to a court. Courts have extended probation officers absolute immunity, even where plaintiffs have alleged that the officers deliberately falsified their presentence reports. *See, Tripati v. U.S.I.N.S.*, 784 F.2d 345, 348 (10th Cir.1986); *Demoran v. Witt*, 781 F.2d 155, 157–58 (9th Cir.1986); *Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir.1984); *Spaulding v. Nielsen*, 599 F.2d 728 (5th Cir.1979); *Crosby–Bey v. Jansson*, 586 F.Supp. 96, 99 (D.D.C.1984); *Friedman v. Younger*, 282 F.Supp. 710, 716 (C.D.Cal. 1968). Absolute immunity was justified in those cases because the probation officers were an integral part of the sentencing process, and in preparing the report acted at the direction of the court.

Similarly, the report prepared by defendants was an integral part of the standard parole review proceedings and was prepared at the Parole Board's direction for its use in carrying out its quasi-judicial functions. Unlike the situation in *Ray v. Pickett*, where the officer's parole violation report *might* trigger further administrative proceedings, 734 F.2d at 373, defendants' report was part and parcel of the Parole Board's ongoing effort to adjudicate plaintiff's parole application. Under the Parole Board's internal procedures, defendants' parole report and accompanying documents provided the primary material from which the Parole Board exercised its core function of deciding whether or not to grant plaintiff parole. In fact, it is hard to conceive how the Board could have made meaningful parole decisions without having available the type of information contained in parole reports similar to the type prepared by defendants.

Thus we find that defendants' role in preparing the parole report was so closely associated with the Parole Board's quasi-judicial function in adjudicating parole requests that defendants must be accorded absolute immunity to protect the integrity of the parole review process.

## III. SUMMARY AND ORDER

Based upon the foregoing, we hereby:

A. Dismiss all claims against defendants Walton, Cook, Anderson, Hanson, Brooks and Lamson;

B. GRANT defendants' motion for summary judgment with respect to plaintiff's claims that

(1) the deliberately false parole report submitted by defendants Alexander and Dooley to the Vermont Parole Board violated plaintiff's fourteenth amendment rights;

(2) plaintiff's six-hour administrative segregation violated defendant's fourteenth amendment rights; and

(3) the use of urinalysis testing results during plaintiff's prison disciplinary proceeding violated plaintiff's fourteenth amendment rights; and

C.  DENY defendants' motion for summary judgment with respect to plaintiff's claims that

(1) Bellini's and Turner's failure to protect plaintiff from the threats of other inmates violated plaintiff's eighth and fourteenth amendment rights;  and

(2) defendant's failure to call plaintiff's requested witnesses at his prison disciplinary hearing violated plaintiff's fourteenth amendment rights.