**William Daniel LaFRANCE**

v.

**Pamela RAMPONE, Vermont Parole Board, Stephen Lickwar, Vermont Parole Officer.**

**William Daniel LaFRANCE**

v.

**Vincent J. HANIFIN, Paul Donnelly.**

Civ. A. Nos. 87–29, 87–37.

United States District Court,
D. Vermont.

Feb. 5, 1988.

---

William D. LaFrance, pro se.

Peter Hall, Abell, Kenlan, Schwiebert & Hall, Rutland, Vt., for plaintiff.

Joanna A. Mauer, Asst. Atty. Gen., Dept. of Corrections, Waterbury, Vt., for defendant.

## OPINION AND ORDER

BILLINGS, District Judge.

On August 7, 1987, Magistrate Jerome Niedermeier recommended granting the defendants' motion for summary judgment in the above-captioned consolidated matters. The Magistrate's report and recommendation concluded that the defendants, a parole board member and parole officers for the State of Vermont, were absolutely immune from plaintiff's civil rights action. By order of September 24, 1987, the Court accepted the recommendation regarding defendant Rampone, the parole board member, but withheld decision regarding the other defendants. The Court appointed counsel to brief the sole question of whether the defendant parole officers were entitled to absolute or qualified immunity from suit. Upon review of the Magistrate's report and recommendation, the memoranda of the parties, and controlling and supporting case law, the Court declines to accept the report and recommendation as it pertains to defendants Donnelly, Lickwar, and Hanifin. For the reasons set forth below, the Court holds that the defendant parole officers are entitled to a qualified, not an absolute, immunity from suit for the actions alleged by plaintiff. Accordingly, defendants' motion for summary judgment is DENIED.

### Background

Plaintiff, a prisoner at the Rutland Community Correctional Center, filed his *pro se* complaint in February, 1987, pursuant to 42 U.S.C. § 1983. Plaintiff complains about a report submitted by defendant Donnelly to the parole board during the board's review of plaintiff's eligibility for parole. Donnelly, a parole officer, was primarily responsible for the report, although the report contained information provided by defendants Lickwar and Hanifin, who are also parole officers. Plaintiff claims that the defendants intentionally included erroneous information in the report in an effort to deprive plaintiff of parole. Defendants moved for summary judgment asserting absolute immunity from suit. Defendants place great reliance on *Chitty v. Walton*, 680 F.Supp. 683 (D.Vt.1987), which held, under similar facts, that parole officers are entitled to absolute immunity. Bound by *Chitty*, the Magistrate recommended granting defendants' motion for summary judgment. The Court declines to follow *Chitty*, and thus rejects the Magistrate's report.[1]

### Discussion

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1. D. II. of the Local Rules for United States Magistrates, the Court conducts a *de novo* review of the legal issues presented. Defendants are entitled to summary judgment if there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The question presented is whether state parole officers, who file a report and recommendation to the state parole board concerning a prisoner's eligibility for parole, are entitled to absolute immunity from suit. The United States Supreme Court has specifically declined to decide this question. *See Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980) ("We also conclude that it is not necessary for us to decide any question concerning the immunity of state parole officials as a matter of federal law...."); *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985).

---

1. The Court acknowledges the precedential constraints imposed upon Magistrate Niedermeier. In *Chitty v. Walton*, the Magistrate recommended affording the defendants qualified immunity. Chief Judge Coffrin did not accept the recommendation and granted absolute immunity. Bound by *Chitty* in this action, the Magistrate recommended affording the defendants absolute immunity. The Court, mindful of *stare decisis*, nevertheless chooses to not follow *Chitty* and, therefore, rejects the Magistrate's recommendation.

To date, the United States Court of Appeals for the Second Circuit has not answered the question. In *Chitty v. Walton*, 680 F.Supp. 683 (D.Vt.1987), Chief Judge Coffrin decided "somewhat uneasily" that parole officers preparing a report for the parole board act in a quasi-judicial role rather than an investigative or administrative role, and are thus entitled to absolute immunity. *Id.* at 685–86. Chief Judge Coffrin analogized the role of a parole officer reporting to a parole board to that of a probation officer reporting to a sentencing court. Chief Judge Coffrin reasoned that parole officers, like probation officers, are entitled to and require absolute immunity to properly perform their function. *Id.* at 686. Because the Court now finds that the safeguards present in the probation officer—sentencing court context are absent in the parole officer—parole board context, it declines to follow *Chitty*. We note also, that *Chitty* was decided before *Dorman v. Higgins*, 821 F.2d 133 (2d Cir.1987), which provides a method of analysis for determining when absolute immunity is appropriate.

The United States Supreme Court has stated on a number of occasions that an official's function, rather than an official's title, will determine the appropriateness of absolute immunity. *See, e.g., Cleavinger*, 474 U.S. at 201, 106 S.Ct. at 501; *see also Stewart v. Lattanzi*, 832 F.2d 12, 13 (2d Cir.1987). Certain functions require the shield of absolute immunity to ensure proper performance of discretionary functions without the threat of civil liability. *See Dorman*, 821 F.2d at 136. Nevertheless, this Circuit "has recognized that 'absolute immunity is of a rare and exceptional character.'" *Stewart*, 832 F.2d at 13 (quoting *Barrett v. United States*, 798 F.2d 565, 571 (2d Cir.1986) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985)). A panel in this Circuit recently elaborated on the analysis required to ascertain the appropriateness of immunity. *Dorman*, 821 F.2d 133.

In *Dorman v. Higgins*, a convicted offender filed suit against a federal probation officer alleging that the officer made false statements in a presentence report requested by a sentencing judge. The district court dismissed the action, ruling that federal probation officers preparing presentence reports are entitled to absolute immunity from suit for money damages. In affirming the dismissal of the action, the United States Court of Appeals for the Second Circuit outlined the factors for consideration before granting absolute immunity:

> The entitlement of a government official to absolute immunity, protecting him from liability, from suit, and from any scrutiny of the motive for and reasonableness of his official actions, depends on the function he performs. Absolute immunity is rarely granted; qualified immunity is the norm. Functions most apt to be accorded absolute, rather than qualified, immunity are those integrally related to the judicial process. Two types of factors inform such a decision: the need for absolute immunity in order to permit the effective performance of the function, and the existence of safeguards against improper performance.

*Id.* at 136 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). After listing those officials whose function necessitated absolute immunity, the Court added federal probation officers to the "list." *Id.* at 137.

In the instant dispute, defendants argue that the relationship of parole officers to the parole board is the functional equivalent of probation officers to a sentencing judge. Just as probation officers act as an arm of the court in the sentencing process, defendants argue, they act as an arm of the parole board in the parole eligibility process. While defendants' argument is not without support, it nevertheless ignores the significant distinctions between the probation officer—sentencing court relationship and the parole officer—parole board relationship. Safeguards which exist in the former relationship that ensure proper performance are not present in the latter relationship.

As previously indicated, *Dorman* dictates that courts, asked to make decisions concerning immunity, weigh the dual

factors of an individual's function and the existence of safeguards to protect against improper performance. To look solely at the function without considering the safeguards is to ignore the *Dorman* analysis. *See also Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). Notwithstanding the functional similarities between the role performed by the defendants here and that performed by probation officers, there are fewer safeguards here to protect against unreasonable official action. The protection against unreasonable action is equally important in the parole eligibility context as in the sentencing context because both situations implicate the same interest in freedom from confinement.

In the context of the probation officer—sentencing court relationship, the following safeguards protect the integrity of the process:

1. Judicial decisions are apolitical. *Dorman,* 821 F.2d at 136.

2. Precedent binds and shapes sentencing decisions. *Id.*

3. Sentencing occurs in an adversarial context, with the opportunity to contest allegedly false information contained in a presentence report. Fed.R.Crim.P. 32(c)(3)(D).

4. Sentencing judges must determine by a preponderance of the evidence the accuracy of challenged information, and state on the record the information relied upon in sentencing. Fed.R.Crim.P. 32(c)(3)(D); *United States v. Fatico,* 603 F.2d 1053 (2d Cir.1979).

5. Probation officers are court appointed and operate as an arm of the court independently of the on-going tensions that exist in correctional institutions. *See Wolff v. McDonnell,* 418 U.S. 539, 561–62, 94 S.Ct. 2963, 2977–78, 41 L.Ed.2d 935 (1974).

6. Appellate review of sentencing decisions is regularly available. *Dorman,* 821 F.2d at 136–37.

The safeguards outlined above do not exist in the context of a parole officer making a report to a parole board. Specifically:

1. While parole boards are "neutral and detached," *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), and operate as an arm of the sentencing court, *Sellars v. Procunier,* 641 F.2d 1295, 1302–03 n. 15 (9th Cir.1981) (citations omitted), the boards are not "apolitical" like an Article III court. Parole board members in Vermont are appointed by the governor with the advice and consent of the senate for a term of five years. 28 V.S.A. § 451. The insulation from political debate and repercussion that protects a sentencing judge does not similarly protect parole board members.

2. The parole board, though it may well strive for consistency, is not bound by precedent.

3. Unlike sentencing, parole decisions are not necessarily made in an adversarial environment. In determining parole eligibility, "the board in its discretion may hear oral statements or arguments by attorneys or other persons with an interest in the case before the board." 28 V.S.A. § 502(b). As parole board members are not necessarily trained in the law, and the rules of evidence do not apply at eligibility hearings, information that might be challenged as inappropriate for consideration at sentencing might be considered at the parole hearing.

4. The parole board need not indicate how and why it reached a particular conclusion.

5. Parole officers in Vermont work for the Department of Corrections and are subject to the on-going tensions of prison life. *See Wolff,* 418 U.S. at 562, 94 S.Ct. at 2977–78. They are not appointed by the court and do not enjoy the independence of federal probation officers.

6. Parole decisions are reviewable only to ensure statutory compliance, not to question the merits of a parole decision. 28 V.S.A. § 454.

The comparison outlined above indicates that the safeguards present in the probation officer—sentencing court context are absent in the parole officer—parole board context. Under the analysis set forth in

*Dorman,* the absence of safeguards impacts the decision regarding the appropriate level of immunity. Applying the *Dorman* reasoning to the instant action, the Court concludes that the absence of safeguards to protect against improper performance necessitates granting defendants a qualified, rather than an absolute, immunity from suit. The Court emphasizes, however, that the grant of qualified immunity "is not of small consequence." *Cleavinger,* 474 U.S. at 206, 106 S.Ct. at 504. Qualified immunity provides ample protection to allow defendants to perform their duties effectively without the threat of civil liability. Protected by qualified immunity, defendants will not be liable to plaintiff unless they violated clearly established law of which a reasonable official would or should have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Salahuddin v. Coughlin,* 781 F.2d 24, 27 (2d Cir.1986).

CONCLUSION

Based upon the foregoing analysis, the report and recommendation of the Magistrate is not accepted and defendants' motion for summary judgment is DENIED. The matter is remanded to the Magistrate for proceedings consistent with this Opinion and Order.

SO ORDERED.