No. 90-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

MILTON D. BRUNSVOLD,

        Plaintiff and Appellant,

-vs-

STATE OF MONTANA, THE MONTANA
DEPARTMENT OF INSTITUTIONS,
HENRY RISLEY, JAMES BENNETT,
Probation Officer,

        Defendants and Respondents.



APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Leonard J. Haxby; Daniel R. Sweeney, Butte, Montana

    For Respondent:

    Hon. Marc Racicot, Attorney General, Helena,
    Montana; Norman C. Peterson, Assistant Attorney
    General, Helena, Montana

Submitted on Briefs: May 23, 1991

Decided: October 31, 1991

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Milton D. Brunsvold appeals from a Decision and Order of the First Judicial District Court, Lewis and Clark County, granting summary judgment in favor of all defendants in his suit for damages alleging wrongful incarceration in the Montana State Prison. We affirm in part and reverse in part.

On March 8, 1978, the Richland County District Court convicted appellant Milton D. Brunsvold (Brunsvold) on a guilty plea to a felony charge of issuing bad checks. Brunsvold was granted a deferred sentence for a period of three years and placed on probation. The court attached certain conditions to the deferred sentence.

On January 2, 1980, based on violations of conditions of probation, the District Court revoked Brunsvold's deferred sentence and sentenced him to three years in prison with execution of the entire three-year sentence conditionally suspended. When Brunsvold again failed to abide by the conditions, the court revoked his suspended sentence on August 27, 1980. He was sentenced to three years in prison, with two years suspended; he began serving his sentence on September 12, 1980, and was discharged from the Montana State Prison on May 12, 1981.

On the day he was discharged, Brunsvold requested permission to travel to Idaho. His probation officer granted Brunsvold's request under the condition that Brunsvold return to Montana on May 27, 1981. Thereafter, James Bennett, a probation officer of Montana's Department of Institutions, noted that Brunsvold had not returned as ordered and also had failed to contact any parole or

2

probation officer since he left the State. Based on these facts, Bennett determined that Brunsvold had again violated the conditions of his suspended sentence. Thereafter, on June 2, 1982, Bennett filed a Report of Violation recommending a hearing regarding Brunsvold's violation of conditions and revocation of the two-year suspended sentence. In the report, Bennett stated:

> [I]n reference to the recent Miller/Blackerby rulings, which requires good time be given while on a suspended sentence, this officer has computed this subject's discharge date as at approximately July 25, 1982.

Bennett was referring to two unpublished cases, Miller v. State (1982), No. 81-565 and State v. Gray (1982), No. 82-164, in which we directed the Department of Institutions to credit good time allowances to sentences where the defendants were on probation while serving a suspended or deferred sentence.

The county attorney subsequently filed a petition to revoke Brunsvold's suspended sentence and an information charging Brunsvold with bail jumping. Brunsvold's affidavit states that he tried unsuccessfully to contact Bennett while in jail awaiting the revocation hearing; he wanted to tell Bennett that he believed he was being held improperly because his suspended sentence had been discharged. Under a plea bargain agreement and on advice of counsel, appellant pled guilty to the bail jumping charge and did not resist the petition to revoke his suspended sentence. On March 2, 1983, the District Court revoked Brunsvold's suspended sentence and resentenced him to two years in prison. Brunsvold was imprisoned on March 17, 1983.

After arriving at the prison, Brunsvold states he tried unsuccessfully to communicate the information concerning his alleged

improper incarceration to Warden Henry Risley. In July of 1983, Brunsvold filed a Petition for a Writ of Habeas Corpus on the grounds that he had discharged all of his sentences, based on accrued but uncredited good time, prior to the March 2, 1983 revocation hearing. On September 1, 1983, the Powell County District Court heard testimony on Brunsvold's petition. The transcript of the Habeas Corpus hearing reveals that Bennett's good time calculations were incorrect; indeed, based on accrued good time, Brunsvold's entire suspended sentence had expired not only prior to the time the Richland County District Court revoked it, but prior to the time the petition to revoke was filed. Based on this testimony, the court ordered Brunsvold's immediate release. On December 14, 1984, following his release, Brunsvold filed a civil suit alleging wrongful incarceration. He named as defendants the State of Montana, the Department of Institutions, Warden Henry Risley of the Montana State Prison and probation officer James Bennett, who incorrectly calculated his good time credits. The District Court granted defendants' motion for summary judgment on the basis of § 2-9-112, MCA, the judicial immunity statute, and this Court's decision in Knutson v. State (1984), 211 Mont. 126, 683 P.2d 488.

Brunsvold appeals from the grant of summary judgment. The sole issue we address, since it was the dispositive issue in the District Court's Decision and Order, is the following:

Did the District Court err in holding that each of the named defendants is entitled to immunity as a matter of law under § 2-9-112, MCA?

Brunsvold argues on appeal that the identity and acts of the named defendants herein are not "on all fours" with Knutson, and that

4

nothing in § 2-9-112, MCA, or its legislative history suggests an intention to apply judicial immunity to probation officers and prison officials. The defendants contend that Knutson extends judicial immunity to all who participate in any way in judicial acts. It is clear that the District Court felt compelled by Knutson to grant summary judgment to all of the defendants herein on the basis of their participation in the judicial act of sentencing. In Knutson, we said clearly that sentencing is a judicial act. Knutson, 211 Mont. at 128, 683 P.2d at 490. We also said that the immunity statute protects "any governmental agency involved in the judicial act of sentencing." Knutson, 211 Mont. at 129, 683 P.2d at 490. Perhaps understandably, the District Court concluded that Knutson was controlling as to all defendants herein.

The judicial immunity statute, § 2-9-112, MCA, must be construed and applied as to each defendant. The starting points, of course, must be the language of the statute and, if appropriate, the legislative intent behind it; but a brief discussion of the history of the principle of judicial immunity may help set the stage for the appropriate application of the statute to the facts in this case and such clarification of Knutson as may be necessary.

Judicial immunity is essentially a common law principle existing as early as 1354 (Book of Assizes, 27 Edw. III, pl. 18). It became a well recognized rule after the decision in Floyd and Barker, 12 Co. Rep. 23, 77 Eng. Rep. 1305 (1608), and was recognized in this country as early as 1868. Randall v. Brigham (1868), 74 U.S. (7 Wall.) 523, 19 L.Ed. 285. Simply stated, the common law rule is that judges are not liable in a civil action for damages for judicial acts. The policy rationale for the rule was, and is, to assure that

5

judges exercise their judicial functions with independence and without fear of consequence.

As a general rule, the 1972 Montana Constitution abrogated the doctrine of sovereign immunity. It also provided that immunity from suit could be established only by a two-thirds vote of each house of the legislature. Art. II, Sec. 18, 1972 Mont. Const. The legislature so acted in 1977, passing several immunity statutes; among them was § 2-9-112, MCA, the judicial immunity statute at issue herein.

The legislative history of § 2-9-112, MCA, provides no concrete assistance in ascertaining the scope and parameters of judicial immunity intended by the legislature. In any event, the language used by the legislature is clear and unambiguous and its application to the specific facts before us is determinative of the issue on appeal.

It is clear that in order to fall within the judicial immunity shield, the State and the Department must be sued "for acts or omissions of the judiciary," while Risley and Bennett each must be a "member, officer, or agent" of the judiciary discharging "an official duty associated with judicial actions of the court." Section 2-9-112, MCA. Thus, the relationship of each of the defendants to the court in performing the functions or activities for which claims have been asserted against them must be examined.

To begin at the beginning: It is clear that the "determination and imposition of sentence are the exclusive duty of the court" (§ 46-17-301(4), MCA) and, thus, that the court itself is not liable for the judicial act of sentencing. Section 2-9-112(2), MCA. Brunsvold has not asserted such liability. The statute is also clear

6

that "the state and other governmental entities are immune from suit for acts or omissions of the judiciary." Section 2-9-112(1), MCA. Thus, to the extent that Brunsvold's claims against the State and the Department arise solely from their actions in implementing the judicial act of sentencing by incarcerating Brunsvold, those entities are entitled to judicial immunity. As to these defendants and the referenced actions of each, Knutson is controlling.

As to defendants Risley and Bennett, it is clear that neither is a member of the judiciary; nor are they officers of the court, since each is an employee of the executive branch. The question, then, is whether either was an agent of the court in this factual setting.

It is clear that Risley was an agent of the court in accepting Brunsvold into the Montana State Prison. He acted in direct obedience to, and discharge of, the court's sentencing order. Thus, he was an agent of the judiciary discharging "an official duty associated with judicial actions of the court." Section 2-9-112(2), MCA. As such, and to that extent, we affirm the District Court's grant of summary judgment in Risley's favor.

Bennett's relationship to the court on the facts of this case differs significantly from that of Risley, and it is here that we must draw a necessary line in construing the judicial immunity statute. Bennett performed an administrative or ministerial task in calculating Brunsvold's good time credits. He did not do so at the direction of the court which ultimately ordered Brunsvold's incarceration, but as a routine part of his daily job requirements. Under this factual situation, Bennett was not so intimately associated with a judicial act as to be an "agent" of the judiciary

7

discharging "an official duty associated with judicial actions of the court" under § 2-9-112(2), MCA. As such, he was not entitled to judicial immunity and the District Court erroneously granted summary judgment in his favor. It follows logically that, to the extent any part of the appellant's claims against the State and the Department are based on their respective liability for the torts or other wrongs of their employees, summary judgment also was erroneously granted in their favor.

A strict construction of the statute simply does not allow an expansion of judicial immunity to cover the factual situation before this Court with regard to the particular act by defendant Bennett. It is true that such an expansion would create a bright, clear line; it would simplify the application of the judicial immunity statute by extending its coverage, at least by implication, to any act of any employee of any governmental unit or branch who has any contact of any kind with any judicial act or proceeding. Neither the statute's language nor its legislative history reflect a legislative intent to do so.

It is of interest to note, perhaps, that our holding herein is consistent with results in many jurisdictions. Courts have been reluctant to expand judicial immunity to cover acts other than those intimately related to, or amounting to an integral part of, judicial proceedings. The statutory underpinnings for judicial immunity differ among the jurisdictions and none mirror precisely the Montana statute; in addition, the federal courts continue to apply common law immunity principles. Yet, applying a variety of approaches, many courts have considered the nature of the act or activity being performed and its relationship to the judicial function. The federal

8

courts address such cases, brought as § 1983 claims, by utilizing a functional/qualified immunity approach. See, e.g., Harlow v. Fitzgerald (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396; Galvan v. Garmon (5th Cir. 1983), 710 F.2d 214; Ray v. Pickett (8th Cir. 1984), 734 F.2d 370. This approach also would be applicable in § 1983 cases in state courts where state immunity defenses would not be available. In Florida, where a state statute waives judicial immunity, courts still apply the common law rule of judicial immunity, but discretionary governmental functions undergo a "planning" versus "operational" analysis whereby operational functions are not entitled to the immunity shield. Berry v. State (Fla. App. 1981), 400 So.2d 80, rev. denied, 411 So.2d 380 (Fla. 1981). Under the Kansas Tort Claims Act judicial function exemption, "judicial function" does not incorporate ministerial tasks. Cook v. City of Topeka (Kan. 1982), 654 P.2d 953. And, as a final example, while an Arizona probation officer preparing a presentence report pursuant to or in aid of court direction is entitled to absolute judicial immunity, supervisory or administrative actions by a probation officer not pursuant to such court direction do not qualify for judicial immunity. Acevedo v. Pima County Adult Probation Dept. (Ariz. 1984), 690 P.2d 38.

As a final matter, the State has admitted error in the computation of appellant's good time. The District Court concluded that liability for wrongful incarceration has been established as a matter of law as a result of that admission. It is our view that the ultimate liability of any of the named defendants remains to be established.

Among other possible issues on remand, therefore, is whether

9

or not there were independent intervening causes of appellant's incarceration. This question of fact will be decided by the trier of fact on remand, in the event this matter reaches the trial stage.

To summarize our holding in this case, judicial immunity under § 2-9-112, MCA, does not extend to the factual situation involving defendant Bennett in the case at bar. Therefore, we reverse the District Court's grant of summary judgment in his favor and in favor of the State, the Department and Risley insofar as claims against them are asserted other than for their actions in implementing the sentencing order, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

_____
Justice

I concur:

_____
Honorable Peter L. Rapkoch,
District Judge, sitting for
Justice R.C. McDonough

10

Justice Terry N. Trieweiler specially concurring.

I concur with the reversal of the District Court judgment in favor of the defendant James Bennett.

To me, the issue presented to this Court is a simple one which merits little discussion.

The 1972 Mont. Const., art. II, § 18, provides:

> The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.

People in Montana who have been injured by the wrongful acts of their government have a constitutional right to seek compensation. Any statute in derogation of a constitutional right should be strictly construed. 73 Am.Jur.2d *Statutes* § 283. If the legislature has not clearly provided for immunity, this Court has no business creating immunity. B.M. v. State (1982), 200 Mont. 58, 649 P.2d 425.

Section 2-9-112, MCA, pursuant to which the District Court dismissed plaintiff's claim against Bennett, does not say anything about probation officers. It talks about "acts or omissions of the judiciary."

Bennett was not a member of the judiciary; he was not employed by the judiciary; and he was not acting pursuant to a directive from any member of the judiciary at the times complained of by the plaintiff.

11

Bennett's acts which formed the basis of the plaintiff's complaint were taken on his own initiative. His conclusions were provided to the county attorney for the purpose of instigating sentence revocation proceedings against the plaintiff. Bennett, who was employed by the executive branch of government, provided his misinformation to another member of the executive branch of government.

Therefore, by no stretch of the imagination can Bennett's conduct be construed as an "act or omission of the judiciary." Any assertion to the contrary would be the sheerest form of judicial legislation.

The dissenters, who have apparently learned little from their uncharted sojourn to the land of governmental immunity (see, Peterson v. Great Falls School District (1989), 237 Mont. 376, 773 P.2d 316, and its progeny), wish to replay that debacle under the guise of judicial immunity. They would have this Court embark on a whole new body of judicially-created opportunities for public servants to avoid responsibility for their wrongful, unlawful, or negligent conduct. Lessons from recent history should not be so quickly forgotten.

_____
Justice

I concur with the foregoing special concurrence of Justice Trieweiler.

_____
Justice

12

Justice Fred J. Weber dissents as follows:

The judicial immunity statute, § 2-9-112, MCA, in pertinent part states:

> **2-9-112. Immunity from suit for judicial acts and omissions.** (1) The state and other governmental units are immune from suit for acts or omissions of the judiciary.
> (2) A member, officer, or agent of the judiciary is immune from suit for damages arising from his lawful discharge of an official duty associated with judicial actions of the court.
> . . .

The majority opinion is primarily devoted to a discussion of the immunity of Warden Risley (Risley) of Montana State Prison and Probation Officer Bennett (Bennett). The majority concludes that Risley was an agent of the court in accepting Brunsvold into Montana State Prison because he acted in direct obedience to and discharge of the court's sentencing order. As a result the majority concluded that he was an agent of the judiciary under the above statute and to that extent concluded that Risley was immune. I agree with that conclusion.

Next the majority distinguished Bennett's relationship to the court from that of Risley. The majority stated that Bennett performed an administrative or ministerial task in calculating Brunsvold's good time credits; that he did not do so at the direction of the court which ordered Brunsvold's incarceration, but as a routine part of his daily job requirements. The majority then reached the conclusion that Bennett was not so intimately associated with a judicial act as to be an "agent" of the judiciary as statutorily defined. He therefore was found not entitled to

13

judicial immunity. I disagree with that conclusion.

While it is true that probation and parole officers are a part of the executive branch of government, it is essential to keep in mind the statutory relationship established between parole and probation officers and the court system. As an example, under § 46-23-1011, MCA, in the event that a district court desires to change a condition of probation, it is required to give notice to the probation and parole officer so that he shall be given an opportunity to present his ideas and recommendations. Section 46-23-1012, MCA, gives the parole and probation officer the power to arrest a person on parole or probation without a warrant. Section 46-23-1013, MCA, sets the procedure to be followed after an arrest. In pertinent part § 46-23-1013, MCA, provides:

> (1) Upon such arrest and detention, the probation and parole officer shall immediately notify the court with jurisdiction over such prisoner and shall submit in writing a report showing in what manner the defendant has violated the conditions of release. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged.
> . . .
> (2) If the violation is established, the court may continue to revoke the probation or suspension of sentence and may require him to serve the sentence imposed or any lesser sentence and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.
> . . .

The above cited code sections are included in Part 10 - Supervision of Probationers and Parolees. Note that the statutory requirement for the parole and probation officer is that when he finds a violation of probation or parole, he is required to immediately notify the court and show in what manner that person has violated

**14**

the conditions of release. That is the foundation for the subsequent hearing by the court and its determination whether revocation should be granted. That procedure was followed in the present case.

Bennett prepared a Report of Violation dated June 2, 1982, on the printed form provided by the Department of Institutions. The form included the following heading and salutation:

STATE OF MONTANA

DEPARTMENT OF INSTITUTIONS
Corrections Division
Bureau of Probation and Parole

REPORT OF VIOLATION

To:  Seventh Judicial District Court
Sidney, Montana                    Date:  June 2, 1982

Name:  BRUNSVOLD, Milton Dean      No. Docket #1249-C,
                                   DOI#A013 490

The foregoing report of probation set forth the details of the original sentencing, the reports of violations and the factual determinations by Bennett. It is that Report of Violation which contains the erroneous calculation which affords the basis for the suit against Bennett. That report stated as follows:

> It should be noted, however, that Mr. John O'Hern, Probation and Parole Agent in Missoula, Montana is now deceased and in reference to the recent Miller/Blackerby rulings, which requires good time be given while on a suspended sentence, this officer has computed this subjects discharge date as at approximately July 25, 1982.

> In any event, it is this officers opinion that this subject has disregarded the conditions imposed by the Court and should be located and returned to the Court of Jurisdiction for a hearing on this matter and the two (2) year suspended sentence be revoked. (Emphasis added.)

15

Clearly Bennett was following the statutory requirements which apply to his job as a parole and probation officer. Applying the test used with Warden Risley, it appears that he clearly was discharging an official duty associated with judicial actions of the court, as the sole purpose for the Report of Violation is summed up in the last quoted paragraph where he expresses the opinion that defendant had disregarded the court imposed conditions and should be returned to the court for revocation of his two year sentence. The action of Bennett is more closely related to the District Court than was true of Warden Risley. The only purpose for the Report of Violation was to express an opinion which would result in court action. In contrast, all Risley did was to place the defendant in prison, and all actions subsequent to that were under his own administrative control and required no reporting to the District Court. I conclude that the actions of Parole and Probation Officer Bennett in submitting the Report of Violation were clearly actions of an agent of the judiciary discharging an official duty associated with judicial actions of the court and as a result that Bennett was immune under § 2-9-112, MCA.

In addition, the facts of this case bring it within the holding of this Court in Knutson v. State of Montana (1984), 211 Mont. 126, 683 P.2d 488, where this Court stated:

> There is no need for semantics in this case, however. The immunity statute applies to judicial acts with no stated limitation. It applies to protect the state and governmental agencies whenever the judicial power of the state is put to use in a judicial action. . . .
> Knutson argues on appeal that the immunity statute does not apply here because the Department of Institutions breached its duty to determine the good time

16

<u>to which he was entitled</u> and to notify the District Court accordingly. She contends that the District Court in this case acted only as a vehicle through which the harm caused by the Department of Institutions affected her. That argument is a substantial change in theory from her earlier complaint in this case, yet it avails Knutson nothing. Sentences are pronounced by courts, not by the Department of Institutions. Knutson's sentencing was the result of a judicial act. <u>Further, the immunity statute protects any governmental agency involved in the judicial act of sentencing.</u> (Emphasis added.) (Citations omitted.)

<u>Knutson</u> held that a computation of good time by the Department of Institutions was included as a part of the judicial act of sentencing. The Court points out that sentences are pronounced by courts and not by the Department of Institutions—that is of course applicable here because the sentence ultimately determined was not pronounced by Bennett but by the district judge. <u>Knutson</u> further emphasizes that "the immunity statute protects any governmental agency involved in the judicial act of sentencing." The holding of <u>Knutson</u> applies here.

I dissent from the majority conclusion that the actions of Bennett were not entitled to judicial immunity under § 2-9-112, MCA.

_____
                        Justice

Justice John C. Harrison concurs in the foregoing dissent.

_____
                        Justice

17

Chief Justice J. A. Turnage dissenting:

I concur in the dissent of Justice Fred J. Weber, and respectfully state that there are further reasons why the majority of the Court has erred.

In view of the result the majority has reached subjecting Probation Officer Bennett to Brunsvold's tort action for damages, I am more than somewhat puzzled, as I am certain the bench and bar will be, by that part of the majority opinion which states:

> It is clear that Risley was an agent of the court in accepting Brunsvold into the Montana State Prison. He acted in direct obedience to, and discharge of, the court's sentencing order. Thus, he was an agent of the judiciary discharging "an official duty associated with judicial actions of the court." Section 2-9-112(2), MCA. As such, and to that extent, we affirm the District Court's grant of summary judgment in Risley's favor.

What about Probation Officer Bennett?

Bennett also was acting "in direct obedience to, and discharge of, the court's sentencing order."

In sentencing Brunsvold the District Court, upon deferring imposition of sentence or suspending his sentence, placed conditions upon his release from custody that included the requirement "that he violate no laws, federal, state, county, or city." Further, "that he shall be under the jurisdiction of the Department of Institutions, Division of Adult Probation and Parole."

18

From the record in this case, Probation Officer Bennett had to consider the following Brunsvold chronology, at least until his July 1983 petition for habeas corpus:

12-23-77   Issuance of bad checks in Montana.

3-8-78     Sentenced to three years (deferred) guilty plea. Criminal Case #1249-C, 7th Judicial District.

3-8-79     Violation of conditions of deferred sentence reported.

11-26-79   Supplemental report of violation of conditions.

1-2-80     Three year deferred sentence revoked. Three year sentence suspended.

6-27-80    Violation of suspended sentence conditions reported.

8-27-80    Three year suspended sentence revoked. Given three year sentence in prison with two years suspended.

5-12-81    Brunsvold completes one year prison term. Requests travel permit to Idaho, to return 5-27-81. Does not return to Montana.

12-26-81   Approximate date of allegation of issuance of bad checks in Idaho (#1).

3-15-82    Approximate date of allegation of issuance of bad checks in Idaho (#2).

6-2-82     Jim Bennett, probation officer, writes report recommending revocation of suspended sentence in Criminal Case #1249-C. He believes at this time that Brunsvold will have completed his suspended sentence on 7-25-82.

6-16-82    Warrant issued for arrest of Brunsvold. $1000 bond set.

19

| 6-18-82 | Thirty days suspended sentence and contempt citation for Idaho bad check #2. |
| 8/82 | Montana arrest warrant served in Idaho. Brunsvold is to appear before the Montana Court on 9-25-82. |
| 9-15-82 | Brunsvold fails to appear. |
| 11-24-82 | One year suspended sentence and restitution for Idaho bad check #1. |
| 12-14-82 | Richland County Attorney files affidavit and motion for leave to file information on Bail Jumping charge (Section 45-7-308). #1614. |
| 1-4-83 | Arrest warrant issued in Idaho for violating terms of probation on bad check conviction. |
| 2-4-83 | Letter sent to Richland County Attorney from the Court in Idaho informing them that the Idaho charge had been closed and the bench warrant issued for Brunsvold's arrest had been withdrawn. |
| 2-28-83 | Plea bargain agreement filed on charges numbering 1249 (Montana bad check) and 1614 (bail jumping). Brunsvold agrees that he violated the conditions of his suspended sentence in #1249, and committed an offense in Idaho. Brunsvold pleads guilty to bail jumping. |
| 3-23-83 | Judgment and sentence in both #1249 and #1614. Bail jumping gets two year term in prison. To serve both that and two year suspended sentence concurrently. Credit for serving one day and designated non-dangerous offender. |
| 3-17-83 | Imprisoned. |
| 7/83 | Petition for Habeas Corpus hearing on grounds that Brunsvold had discharged all of his sentences prior to revocation. |
| 9-1-83 | Habeas Corpus hearing. Brunsvold released. |

Supervision of Brunsvold as a probationer is clearly a part of the judicial function, and Probation Officer Bennett, in carrying out this function, acts as an agent of the judiciary.

Bennett was acting as an agent of the court, as did Warden Risley in confining Brunsvold. There simply can be no distinction drawn between the acts of Risley and the acts of Bennett with relation to such acts being carried out as agents of the judiciary.

In bringing the role of the probation officer into proper perspective, the following statutes must be recognized:

> **46-23-1001. Definitions.** As used in this part, unless the context requires otherwise, the following definitions apply:
>
> . . .
>
> (4) "Probation" means the release by the court without imprisonment, except as otherwise provided by law, of a defendant found guilty of a crime upon verdict or plea, subject to conditions imposed by the court and subject to the supervision of the department upon direction of the court. [Emphasis added.]

Further recognition of probation as a part of the judicial function is found in the statutes relating to the Department of Corrections and Human Services (formerly the Department of Institutions):

> **46-23-1002. Powers of the department.** The department may:
>
> . . .
>
> (3) adopt rules for the conduct of persons placed on parole or probation, except that the department may not

make any rule conflicting with . . . conditions of
probation imposed by a court. [Emphasis added.]


**46-23-1011. Supervision on probation.** (1) The department shall supervise persons during their probation period in accord with the conditions set by a court. [Emphasis added.]


**46-23-1013. Action of court after arrest.** (1) Upon such arrest and detention, the probation and parole officer shall immediately notify the court with jurisdiction over such prisoner and shall submit in writing a report showing in what manner the defendant has violated the conditions of release. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged. The hearing may be informal or summary.

(2) If the violation is established, the court may continue to revoke the probation or suspension of sentence and may require him to serve the sentence imposed or any lesser sentence and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

(3) If it shall appear that he has violated the provisions of his release, whether the time from the issuing of such warrant to the date of his arrest or any part of it shall be counted as time served on probation or suspended sentence shall be determined by the court. [Emphasis added.]


Brunsvold, as the chronology noted, received his sentences by orders of the District Court; when his deferment of sentences and suspension of sentences were revoked, it was by order and sentence of the District Court; and, of course, his imprisonment in the Montana State Prison was by order and sentence of the District Court. The majority does not question that such were judicial

22

acts. It was not Bennett that sentenced Brunsvold and caused his imprisonment in the Montana State Prison; it was the District Court. The part that Bennett played in that regard was as an agent of the judiciary.

In holding that Warden Risley is an agent of the court and Probation Officer Bennett is not an agent of the court the majority is making a distinction without a difference.

The definition of agency that has been a part of our Code since 1895 should settle this question:

> **28-10-101. Definitions of agent and agency.** An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency.

Both Risley and Bennett certainly represented the court in dealing with the third person Brunsvold. The fact that both of their paychecks are written by an executive branch of government and their appointments made by the executive branch of government has nothing to do with the fact that they, in their official capacities and with relation to Brunsvold and others similarly situated, represent the court in dealing with those third persons and they therefore are agents of the court.

From information obtained from the Montana Department of Corrections and Human Services, of which the Court could properly take judicial notice, there currently are approximately 3,436 individual active probation supervision cases and 592 parole cases

23

in the State of Montana. There are currently fifty-one adult probation officers in Montana, and all of these cases are required to be supervised by adult probation officers as agents of the court that imposed sentence in each of the cases. If Montana's adult probation officers are personally subject to civil suit for errors in presentence or probation reports submitted to the District Court, whether the error is with or without substance, prejudicial or not prejudicial to the defendant, it will certainly not make their difficult task easier.

Based upon § 2-9-112, MCA, and the statutes cited herein, as well as the precedent of Knutson v. State of Montana (1984), 211 Mont. 126, 683 P.2d 488, the decision of the District Court should be affirmed.

Chief Justice