John SCOTTO, Plaintiff–Appellant,

v.

Arcadio ALMENAS, Carol Forman, Kenneth Wegman, Barbara Mei, James F. O'Rorke, Jr., individually and as a member of the law firm of Skadden, Arps, Slate, Meagher & Flom, New York State Division of Parole, Skadden, Arps, Slate, Meagher & Flom, Defendants–Appellees.

Docket No. 97–7673.

United States Court of Appeals, Second Circuit.

Argued Jan. 6, 1998.

Decided May 5, 1998.

[black redaction bars]

Lawrence G. Golde, Hartman Sands & Foster, New York City (Lawrence M. Sands, on brief), for Plaintiff–Appellant.

Richard L. Huffman, Baden Kramer Huffman & Brodsky, P.C., New York City, for Defendant–Appellee Kenneth Wegman.

Ronald E. DePetris, DePetris & Bachrach, New York City, for Defendant–Appellee Arcadio Almenas.

Lewis Tesser, Segal & Tesser LLP, New York City, for Defendant–Appellee Carol Forman.

Vaughn C. Williams, Skadden, Arps, Slate, Meagher & Flom LLP, New York City, for Defendants–Appellees Barbara Mei, James F. O'Rorke, Jr., and Skadden, Arps, Slate, Meagher & Flom LLP.

John P. Barry, State of New York Attorney General's Office, New York City, for Defendant–Appellee New York State Division of Parole.

Before: VAN GRAAFEILAND, WALKER, Circuit Judges, and KOELTL, District Judge.*

JOHN M. WALKER, Jr., Circuit Judge:

Plaintiff-appellant John Scotto brought this action pursuant to 42 U.S.C. § 1983 against defendants-appellees Arcadio Almenas, Carol Forman, and Kenneth Wegman, all officers of the New York State Division of Parole ("DOP")(collectively, the "DOP defendants"), and against defendants-appellees Barbara Mei, James F. O'Rorke, and Skadden, Arps, Slate, Meagher & Flom LLP (collectively, the "non-government defendants"). Scotto alleged that Almenas and Forman ordered him to withdraw a state court action he had filed against Barbara Mei, that Almenas and Forman threatened to file false parole violation charges against Scotto if he refused to comply with this order, and that when Scotto refused to withdraw the state court action, Wegman issued a warrant for his arrest, all in violation of Scotto's civil rights under the United States Constitution. Scotto also alleged that Barbara Mei and her attorneys, O'Rorke and Skadden Arps, conspired with the government defendants to chill his exercise of his civil rights.

Both the DOP defendants and the non-government defendants moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6). The United States District Court for the Southern District of New York (John S. Martin, Jr., *District Judge*) granted the motion as to the DOP defendants, finding that they were "entitled to absolute immunity with respect to plaintiff's § 1983 cause of action." The non-government defendants withdrew their Rule 12(b)(6) motion and resubmitted it as a motion for summary judgment, pursuant to Fed.R.Civ.P. 56. The district court granted that motion, finding that Scotto had failed to present sufficient facts to support an inference of conspiracy. On appeal, Scotto claims that the DOP defendants are not entitled to absolute immunity, and that there are sufficient facts in the record to support an inference that the non-government defendants conspired with the DOP defendants to violate Scotto's civil rights. For the reasons set forth below, we affirm the judgment of the district court as to all defendants except Almenas, and we vacate and remand the case for further proceedings on Scotto's claims against him.

## BACKGROUND

In 1992, Scotto was convicted of a felony in California. He was released on parole in 1994 and moved to New York. Pursuant to an agreement between the State of California and the State of New York, administration of Scotto's supervised release was assigned to the DOP. Almenas, an employee of the DOP, was appointed Scotto's parole officer.

In September, 1994, while living in New York, Scotto began to work with Barbara Mei's father, Armando Mei, to redevelop a

---

restaurant owned by the latter. As a special condition of parole, Scotto was prohibited from participating in any business without the approval of his parole officer. Scotto alleges that he first sought Almenas's approval in February, 1995, and that in May and June 1995, he continued to discuss with Almenas the details of Scotto's proposed participation in the restaurant. According to Scotto, Almenas was supportive and offered suggestions on the content of the agreement that Scotto was negotiating with Armando Mei. On June 30, 1995, Scotto entered into a "Consultant Agreement" with Armando Mei regarding the operation of the restaurant. Mr. Mei, with the assistance of a liquor license consultant, submitted an application on Scotto's behalf to the New York Liquor Authority seeking permission for Scotto to manage a restaurant licensed to serve alcohol.

On July 26, 1995, Armando Mei, already ill when he signed the agreement a month earlier, died. His daughter, Barbara Mei, assumed control of his businesses. Barbara Mei soon informed Scotto that she had no intention of complying with the Consultant Agreement.[1] Scotto alleges that Barbara Mei withdrew his application to the Liquor Authority. In August 1995, Scotto filed an action in New York State Supreme Court against Barbara Mei, alleging breach of contract and tortious interference with contractual relations and seeking damages and specific performance of the agreement (the "state court action"). Barbara Mei was represented by James F. O'Rorke and Skadden Arps. On September 15, 1995, Scotto obtained a preliminary injunction against Barbara Mei preventing her from "selling, subletting, or contracting for management of the restaurant premises unless a copy of the [consultant agreement] was incorporated in any such agreement." On April 30, 1996, the Appellate Division lifted the injunction; and on December 26, 1996, the Supreme Court concluded that the agreement between Armando Mei and Scotto was unlawful and dismissed the action.

Scotto alleges that on or before September 19, 1995, but after the preliminary injunction against her was entered, Barbara Mei and O'Rorke contacted Almenas in an effort to secure the assistance of the DOP in preventing Scotto from pursuing the state court action, and that Almenas agreed to do so. Barbara Mei asserts that the contact was initiated not by her, but by Almenas. She claims that on August 23, 1995, Almenas paid an uninvited visit to her office while she was out of town and left a note asking her to telephone him. On September 15, 1995, when Ms. Mei returned his telephone call, Almenas requested a meeting. On September 20, 1995, Almenas and Barbara Mei met. Ms. Mei and O'Rorke deny ever having asked Almenas for aid of any kind. Instead, Ms. Mei insists that Almenas simply asked several questions about Scotto and the state court action.

On September 26, 1995, according to Scotto, Almenas orally instructed him to discontinue the state court action and threatened to charge him falsely with a parole violation and to plant illegal drugs in his home if he refused. Scotto further claims that at the same time, Almenas and then-Division of Parole Manhattan Area Supervisor Carol Forman forced Scotto to sign a handwritten document, notarized by Forman, wherein Scotto promised to "do whatever is in my power to terminate the lawsuit ... against Barbara Mei." Scotto alleges that Almenas told him that O'Rorke supplied the legal language for this document. On September 26, 1995, Almenas also imposed a written special condition of parole, precluding Scotto "from engaging in or participating in the ownership or management of any establishment which serves liquor ... [and] from entering into any type of business arrangement where [he] would function as a partner, co-owner, business manager, or consultant" in a business that serves liquor. After discussions with his lawyer, Scotto decided not to withdraw the lawsuit. Finally, Scotto alleges that on September 26, 1995, Almenas

---

1. Barbara Mei claims she believed that the agreement was illegal because it purported to give a felon the authority to manage a business with a liquor license without approval of the New York Alcoholic Beverage Control Board, in violation of N.Y. Alco. Bev. Cont. Law § 102(2). In addition, Barbara Mei believed that due to his illness, her father was not competent to enter into an agreement on the day he signed the contract.

telephoned the California parole authorities and falsely advised them that he had charged Scotto with a parole violation.

From September 26 to October 2, 1995, Almenas continued to press Scotto to drop the suit. On October 3, 1995, O'Rorke faxed to Almenas a copy of a letter he had received from Scotto's counsel indicating Scotto's willingness to settle the state court action. During this time, Almenas had several telephone conversations with Barbara Mei and O'Rorke, both of whom claim that each of these calls was initiated by Almenas and that they never asked Almenas for any help with Scotto's state court action. On October 4, 1995, Almenas learned from Barbara Mei and O'Rorke that Scotto's attorney had noticed depositions in the state court action. Scotto alleges that Almenas again demanded that he discontinue the suit.

On October 6, 1995, Almenas obtained the approval of Kenneth Wegman, a supervisor and senior parole officer at the DOP, to issue an arrest warrant charging Scotto with parole violations. Count One of the warrant charged that Scotto "entered into a contractual agreement to manage" two establishments that served liquor "contrary to [Almenas's] standing verbal instructions." Scotto denies that Almenas imposed any such verbal condition; rather, he alleges that Almenas knew of the agreement no later than June, 1995, and was supportive of it. Count Two charged that Scotto signed a contract to operate these establishments without notifying Almenas. Count Three charged that Scotto recorded his conversations with Almenas without the latter's permission. Almenas arrested Scotto on the same day. Scotto was imprisoned for five days before his attorney obtained a writ of habeas corpus from a state judge. On October 25, 1995, a preliminary parole violation hearing was commenced. DOP Regional Director Michael Goldschmid presented the case against Scotto. Scotto alleges that Almenas, Forman, Barbara Mei, and O'Rorke met for several hours in a closed witness room without attorneys during Scotto's parole violation hearing. Five days later, the New York State Attorney General's office discontinued the parole revocation proceeding.

On November 3, 1995, Scotto filed this action in the United States District Court for the Southern District of New York, alleging violations of 42 U.S.C. §§ 1981, 1983, 1985 and 1986. The complaint alleged that the defendants conspired together to chill Scotto's civil rights, including his right to petition the government for redress of grievances, in violation of the Fifth and Fourteenth Amendments to the Constitution. Scotto further alleged New York state law claims against the defendants for false arrest and imprisonment, malicious prosecution, and intentional infliction of emotional distress. The claims against the DOP, which enjoys Eleventh Amendment immunity, were voluntarily discontinued in the district court, as were the claims under §§ 1985 and 1986 against all defendants.

On August 26, 1996, the district court dismissed the action against the DOP defendants, finding that they were "entitled to absolute immunity with respect to plaintiff's § 1983 cause of action." In a separate order entered on April 28, 1997, the district court granted the non-government defendants' motion for summary judgment, finding that Scotto failed to present sufficient facts to support an inference that they conspired with state actors to deprive Scotto of federally protected rights. Having dismissed the federal cause of action, the district court declined to exercise supplemental jurisdiction over the state law claims. Scotto appeals.

## DISCUSSION

I. Dismissal of Claims Against DOP Defendants

 We review *de novo* the district court's Rule 12(b)(6) dismissal of the complaint against the DOP defendants. *International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 71 (2d Cir.1995) (per curiam); *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 885 (2d Cir. 1990). In reviewing this dismissal, "we must assume—strictly for the purposes of appeal—that the facts alleged in the complaint are true." *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 670 (2d Cir.1995). Rule 12(b)(6) dismissal is proper "only where it appears

beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir.1996) (internal quotations omitted).

The district court ruled that the three DOP defendants, parole officers Wegman, Forman, and Almenas, were entitled to absolute immunity, and therefore dismissed the federal claims against those defendants. We agree with the district court's conclusion that Wegman and Forman are absolutely immune from a suit for damages based upon their actions, which were prosecutorial in nature. However, we find that Almenas is entitled only to qualified immunity, and therefore vacate the dismissal of the action against him.

■■■ Section 1983 creates a federal cause of action against any person who, under color of state law, deprives a citizen of any right, privilege, or immunity secured by the Constitution or laws of the United States.[2] State officials are entitled to some degree of immunity from § 1983 damages actions arising from their official acts. Most executive officials receive qualified immunity, whereby "government officials performing discretionary functions ... are shielded from liability ... insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). A limited number of officials are entitled to absolute immunity from § 1983 damages liability for their official acts. However, because absolute immunity "detracts from section 1983's broadly remedial purpose," *Spear v. Town of W. Hartford*, 954 F.2d 63, 66 (2d Cir.1992), "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478,

486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991). Absolute immunity is proper only in those rare circumstances where the official is able to demonstrate that the application of absolute immunity to the circumstances presented is required by public policy. *See Cleavinger v. Saxner*, 474 U.S. 193, 201, 106 S.Ct. 496, 500–01, 88 L.Ed.2d 507 (1985); *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 2910–11, 57 L.Ed.2d 895 (1978); *Stewart v. Lattanzi*, 832 F.2d 12, 13 (2d Cir.1987) (per curiam); *Barrett v. United States*, 798 F.2d 565, 571 (2d Cir.1986). Courts take a functional approach when determining whether an official receives qualified or absolute immunity; the level of immunity "flows not from rank or title or location within the Government, but from the nature of the [official's] responsibilities." *Cleavinger*, 474 U.S. at 201, 106 S.Ct. at 501 (internal quotations and citations omitted).

■■■ Absolute immunity for judicial acts is well established. *See, e.g., id.* at 199–200, 106 S.Ct. at 499–500; *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967); *see also Butz*, 438 U.S. at 513–14, 98 S.Ct. at 2914–15 (administrative law judges are absolutely immune for adjudicatory acts); *Stewart*, 832 F.2d at 13 ("If the official acts adjudicatively, the official probably has absolute immunity."). State officials are also immune for acts that are prosecutorial in nature. *See Imbler v. Pachtman*, 424 U.S. 409, 427–30, 96 S.Ct. 984, 993–95, 47 L.Ed.2d 128 (1976); *see also Butz*, 438 U.S. at 515, 98 S.Ct. at 2915 ("agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts"); *Spear*, 954 F.2d at 66.

The DOP defendants all claim that their actions were prosecutorial and/or adjudicatory in nature, thereby triggering absolute immunity. On the other hand, Scotto alleges

---

**2.** 42 U.S.C. § 1983 provides in relevant part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

that the actions of the parole officers were investigatory or administrative in nature and thus were entitled only to qualified immunity. To resolve this question, we must examine the role played by each DOP defendant to determine whether he or she performed a function for which absolute immunity is required. *See Stewart*, 832 F.2d at 13. While generally this is a factual inquiry, in the present case the functions performed by each DOP defendant are essentially undisputed; no further factual development is necessary.

### a. Almenas
#### 1. Absolute Immunity

 Almenas is not entitled to absolute immunity. Parole officers are entitled to absolute immunity when they perform judicial functions. Thus, a parole board official is absolutely immune from liability for damages when he "decide[s] to grant, deny, or revoke parole," because this task is functionally comparable to that of a judge. *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981). *Accord, Wilson v. Kelkhoff*, 86 F.3d 1438, 1443–44 (7th Cir.1996); *Anton v. Getty*, 78 F.3d 393, 396 (8th Cir.1996); *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir.1992); *Knoll v. Webster*, 838 F.2d 450, 451 (10th Cir.1988) (per curiam); *Evans v. Dillahunty*, 711 F.2d 828, 831 (8th Cir.1983); *United States ex rel. Powell v. Irving*, 684 F.2d 494, 496–97 (7th Cir.1982); *David v. Rodriguez*, No. 88 CIV. 2115(JFK), 1989 WL 105804, at *2 (S.D.N.Y. Sept.5, 1989); *Smiley v. Davis*, No. 87 CIV. 6047(MGC), 1988 WL 78306, at *3–*4 (S.D.N.Y. July 14, 1988); *Anderson v. New York State Div. of Parole*, 546 F.Supp. 816, 825 (S.D.N.Y.1982). However, Almenas did not make an adjudicative decision to revoke Scotto's parole. According to the complaint, Almenas only recommended to Wegman that a warrant be issued for Scotto's arrest. Therefore, Almenas is not entitled to immunity on this ground. *See Russ*, 972 F.2d at 303 (granting absolute immunity to parole board members for quasi-judicial act of revoking parole, but denying immunity to parole officer who recommended revocation).

Nor were Almenas's actions "integrally related to the judicial process." *Dorman v. Higgins*, 821 F.2d 133, 136 (2d Cir.1987);

*see also Cleavinger*, 474 U.S. at 200, 106 S.Ct. at 500; *Wilson*, 86 F.3d at 1444 (absolute immunity proper for "activities that are inexorably connected with the execution of parole revocation procedures and are analogous to judicial action"), (internal quotation marks omitted). In *Dorman*, we granted absolute immunity from damages suits to federal probation officers for their preparation of presentence reports ("PSRs") because "in preparing presentence reports, a federal probation officer acts as an arm of the court...." 821 F.2d at 137. *Accord, Tripati v. INS*, 784 F.2d 345, 348 (10th Cir. 1986)(per curiam); *Spaulding v. Nielsen*, 599 F.2d 728, 729 (5th Cir.1979)(per curiam); *see also, Hili v. Sciarrotta*, 140 F.3d 210, 213 (2d Cir.1998) (New York state probation officers absolutely immune for preparing and furnishing presentence reports); *Anton*, 78 F.3d at 396 (state parole officers receive absolute immunity for preparing equivalent of PSR).

 However, "[t]he more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir.1990). In *Galvan v. Garmon*, 710 F.2d 214, 215–16 (5th Cir.1983)(per curiam), the Court of Appeals for the Fifth Circuit declined to extend absolute immunity to a state probation officer who mistakenly caused the arrest and incarceration of a probationer. Distinguishing its opinion in *Spaulding*, 599 F.2d at 729, where the court granted federal probation officers immunity for the preparation of PSRs, the court explained that the probation officer in *Galvan* "acted at her own initiative," rather than at the initiative of the court as in *Spaulding*, "and at a different phase of the criminal process less intimately associated with the judiciary." *Galvan*, 710 F.2d at 215. *See also Ray v. Pickett*, 734 F.2d 370, 372–73 (8th Cir.1984) (probation officers not absolutely immune for filing probation violation reports; in filing a probation report, "[t]he probation officer is not acting as closely with the court as in the presentence report process"); *Snell*, 920 F.2d at 692 n. 18 ("In contrast to the preparation of [PSRs], other decisions ... by a ... parole officer warrant only qualified ... immunity because such

decisions are further removed from the judicial process and are not initiated by courts."). As in *Galvan* and *Ray*, Almenas's actions in preparing Scotto's parole violation report and in recommending that an arrest warrant issue were not performed under judicial direction and occurred before the initiation of parole revocation proceedings. Therefore, we conclude that Almenas has not performed judicial functions entitling him to absolute immunity.

■ Parole officers also receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature. *See Ray*, 734 F.2d at 374; *David*, 1989 WL 105804, at *2; *Smiley*, 1988 WL 78306, at *4; *Miller v. Garrett*, 695 F.Supp. 740, 745 (S.D.N.Y.1988); *Johnson v. Kelsh*, 664 F.Supp. 162, 166 (S.D.N.Y.1987); *Anderson v. New York State Div. of Parole*, 546 F.Supp. at 825; *see also Spear*, 954 F.2d at 66 (discussing rationale for prosecutorial immunity); *Schloss v. Bouse*, 876 F.2d 287, 289 (2d Cir.1989) (same). Almenas did not present the case to the hearing officer, so his entitlement to absolute immunity depends on whether he initiated the prosecution by making the discretionary decision to bring charges against Scotto and thereby begin the revocation process. *Cf. Butz*, 438 U.S. at 515, 98 S.Ct. at 2915 ("[a]n agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought" and "should be able to claim absolute immunity with respect to such acts").

In this case, Almenas did not have the discretionary authority to initiate parole revocation proceedings against Scotto. Under New York state regulations, if a parole officer believes that a parolee under his supervision has violated a condition of his parole, "such parole officer *shall* report such fact to a member of the board or a designated officer." N.Y. Comp.Codes R. & Regs. tit. 9, § 8004.2(a) (emphasis added). Upon receipt of such a report, "[t]he member or designated officer *may* issue a warrant ... provided that the designated officer issuing the warrant shall not also be the officer recommend-

ing issuance of the warrant." *Id.* at § 8004.2(b) (emphasis added). Once a warrant is issued, a preliminary hearing is held and the adjudicatory process begins. *See id.* at § 8004.3. Consistent with these regulations, Almenas submitted a parole violation report to Wegman, who decided to issue the warrant.

Faced with a similar scenario, the Court of Appeals for the Eighth Circuit held that a federal probation officer is not entitled to absolute immunity for filing a probation report. *Ray*, 734 F.2d at 374. As in New York, a federal probation officer submits a report to the Parole Commission when he suspects a parolee has violated his parole. The Parole Commission then makes a discretionary judgment as to whether to initiate revocation proceedings. Under these circumstances, the court found that the parole officer had not "initiated" a prosecution in a manner justifying absolute immunity.

> We cannot conclude that the probation officer, in filing a parole violation report, exercises the same degree of discretion as a prosecutor in initiating a criminal prosecution.... We believe that the probation officer's function in this context is more akin to a police officer in deciding whether there is probable cause for an arrest than it is to that of a prosecutor in deciding whether to initiate a prosecution.

*Id.* The Court of Appeals for the Seventh Circuit has reached the same conclusion. *See Wilson*, 86 F.3d at 1445–46 (Illinois parole officer's decision to file a report "does not have a prosecutorial or judicial analog and, consequently, does not fall within the ambit of absolute immunity").

Although district courts in this circuit have differed on this question, *compare Smiley*, 1988 WL 78306, at *4 (New York parole officer's role in filing a report "is not sufficiently analogous to the role of a prosecutor in initiating criminal proceedings to warrant absolute immunity") *with Conner v. Alston*, 701 F.Supp. 376, 378 (E.D.N.Y.1988) (parole officers absolutely immune for recommending issuance of parole warrant), we agree with the analysis in *Wilson* and *Ray*. Almenas's role was investigatory, not prosecutorial. Upon deciding that Scotto had probably

violated his parole, Almenas was required to recommend that a warrant issue. Senior parole officer Wegman thereafter made the discretionary decision to issue the warrant and initiate the parole revocation "prosecution." Almenas's role was similar to that of a police officer applying for an arrest warrant, a function for which qualified immunity is sufficient. We decline to extend absolute immunity more than is strictly necessary to safeguard the independent exercise of the prosecutorial function. For the foregoing reasons, we believe that Almenas is not entitled to absolute immunity for the actions alleged in Scotto's complaint.

### 2. Qualified Immunity

The district court did not consider, and the parties have not briefed, whether or not Almenas, as alleged by Scotto, violated clearly established constitutional norms of which an objectively reasonable person should have been aware. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039; *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Unless he did so, Almenas enjoys qualified immunity from § 1983 damages liability for his actions.

■ On the present record, Almenas cannot establish his entitlement to qualified immunity as a matter of law. Scotto alleges that Almenas fabricated a parole violation and arrested him knowing he lacked probable cause to do so. Such conduct, if proved, would plainly violate Scotto's clearly established right to be free from arrest in the absence of probable cause. *See Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997) (right not to be arrested without probable cause is clearly established); *Oliveira v. Mayer,* 23 F.3d 642, 648 (2d Cir.1994) (same). Moreover, it would be objectively unreasonable for Almenas to believe he had probable cause to arrest Scotto if Almenas himself fabricated the grounds for arrest. No "reasonably competent [ ] officers could disagree," *Ricciuti,* 124 F.3d at 128; *see also Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), that a parole officer can not properly rely on evidence he knows to be false. Therefore, Rule 12(b)(6) dismissal would not be appropriate on the basis of qualified immunity. On remand, fur-

ther factual development, either at trial or at the summary judgment stage, will be necessary to determine whether qualified immunity is available to Almenas.

### b. Wegman

■ The district court properly dismissed the action against Wegman. First, Wegman is entitled to absolute immunity from civil damages liability for the actions about which Scotto complained. Wegman's discretionary decision to sign the arrest warrant based upon Almenas's recommendation initiated the parole revocation proceedings and was prosecutorial in nature. *See, e.g., Wilson,* 86 F.3d at 1446 (parole officer entitled to absolute immunity for "deciding to issue an arrest warrant based upon evidence gathered by others," but not for investigating charge and filing report); *Smiley,* 1988 WL 78306, at *4 (unlike New York parole officer who filed violation report, his supervisor's issuance of warrant "was functionally equivalent to the duties of a prosecutor" and was entitled to absolute immunity). Therefore, Wegman is entitled to absolute immunity.

■ Second, insofar as Scotto premises liability on Wegman's inadequate supervision of Almenas, the district court properly dismissed the action. Wegman cannot be subjected to § 1983 damages liability based on *respondeat superior* or on his failure to supervise Almenas adequately. *See McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977) (plaintiff must allege personal involvement of defendant in alleged constitutional deprivation); *Smiley,* 1988 WL 78306, at *2.

### c. Forman

■ The district court also properly dismissed the claims against Forman. The only direct role Forman is alleged to have played was her threat to initiate proceedings to revoke Scotto's parole unless he agreed to dismiss the state court action against Barbara Mei, O'Rorke, and Skadden Arps. In *Schloss v. Bouse,* 876 F.2d 287, 289 (2d Cir.1989), we held that a municipal prosecutor was absolutely immune for his decision to forgo prosecution of the plaintiff in exchange for the plaintiff's promise to release certain claims

against the municipality and its police officers. We concluded that since a prosecutor possesses absolute immunity for his decision to prosecute, "as a matter of logic, absolute immunity must also protect the prosecutor from damages suits based on his decision not to prosecute." *Id.* at 290. Because the prosecutor's threat to prosecute was "interdependent" with his demand for releases, we found that the prosecutor was entitled to absolute immunity for his conditional decision not to prosecute. *Id.* at 291.

Unlike Almenas, but like Wegman, Forman had the authority to initiate or not to initiate parole revocation proceedings against Scotto. Therefore, Forman's threat to initiate such proceedings, an act for which she is absolutely immune, was "interdependent" with her demand that Scotto dismiss the state court action. *Id.* Forman is thus entitled to absolute immunity.

II. *Summary Judgment in Favor of the Non-government Defendants*

 The district court granted summary judgment to the non-government defendants. We review *de novo* the district court's award of summary judgment, drawing all inferences and resolving all ambiguities in favor of the party opposing the motion. *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869 (2d Cir.1998). "[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *See D'Amico*, 132 F.3d at 149; *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42 (2d Cir.1986) ("mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny" the motion) (internal quotation marks omitted). Instead, "the non-movant must produce specific facts indicating" that a genuine factual issue exists. *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir.1998); *see also Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (internal citations omitted). To defeat a motion, "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512.

 Although Barbara Mei, O'Rorke, and Skadden Arps are not state actors, they may nonetheless be liable in an action under § 1983 if they "jointly engaged with state officials in the challenged action. . . . [P]rivate parties conspiring with [a state official are] acting under color of state law. . . ." *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *see also Rounseville v. Zahl*, 13 F.3d 625, 633 (2d Cir.1994)(involvement of state actor in a conspiracy may ground § 1983 claim against the other conspirators). Even if the state actors are absolutely immune from suit, as are Wegman and Forman, private parties who conspire with them may be held liable for damages. *Dennis*, 449 U.S. at 28, 101 S.Ct. at 186–87; *Rounseville*, 13 F.3d at 633; *Dykes v. Hosemann*, 743 F.2d 1488, 1494 (11th Cir.1984), *rev'd in part on other grounds*, 776 F.2d 942 (11th Cir.1985) (en banc), and *modified*, 783 F.2d 1000 (11th Cir.1986). To defeat the non-government defendants' motion for summary judgment, however, Scotto must present sufficient evidence to support an inference that an improper conspiracy took place. He has not done so.

 Scotto argues that he has presented enough circumstantial evidence to allow a jury reasonably to determine that O'Rorke and Barbara Mei "reached an understanding" with Forman and Wegman to violate Scotto's rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605–06, 26 L.Ed.2d 142 (1970). This evidence consists primarily of several telephone calls and other communications between Almenas and the non-government defendants. However, this evidence does no more than demonstrate that Mei and O'Rorke cooperated with Almenas's investigation into Scotto's alleged parole vio-

lation. In *San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 256 (2d Cir.1984), on similar facts, we affirmed the district court's award of summary judgment to private defendants in a § 1983 action. The plaintiff had alleged that the defendants had conspired with a district attorney to falsely bring charges against the plaintiff; but the plaintiff's only evidence was the fact that the defendants and the district attorney met and otherwise communicated on several occasions. We held that there was "nothing suspicious or improper in such meetings, which are routine and necessary in the preparation of evidence," and that the "mere allegation of their occurrence is [not] sufficient to create a material issue of fact as to whether something improper took place during them. . . ." *Id.*

Scotto has not presented any evidence to support the inference of impropriety that he would draw from Almenas's contact with Barbara Mei and O'Rorke. Both O'Rorke and Barbara Mei specifically deny in their affidavits that they initiated the contact with Almenas, and Scotto has presented no evidence to the contrary. *See Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir.1993) (allegations by plaintiff insufficient to defeat defendants' summary judgment motion in § 1983 conspiracy action where "allegations are unsupported by any specifics, and many of them are flatly contradicted by the evidence proffered by defendants. . . ."). In short, there is nothing in the series of communications between Ms. Mei, O'Rorke, and Almenas, other than Scotto's unsubstantiated speculation, to suggest that anything untoward took place. *Cf. Dory v. Ryan*, 999 F.2d 679, 683 (2d Cir.1993), *modified on reh'g*, 25 F.3d 81 (2d Cir.1994) (summary judgment improper in § 1983 conspiracy action where plaintiff presented affidavit by government witness indicating existence of conspiracy between prosecutor and government witnesses); *Dykes*, 743 F.2d at 1498–99 (summary judgment improper where plaintiff presented extensive evidence supporting inference that private actors were active, willful participants in illegal action by state judge); *Gramenos v. Jewel Cos.*, 797 F.2d 432, 436 (7th Cir.1986)(summary judgment proper where shopkeeper asked police officer to arrest plaintiff and every witness testified there was no agreement between officer and shopkeeper).

Scotto attempts to support his claim of conspiracy by making other allegations of purported collaboration between Almenas and the non-government defendants. These allegations are not substantiated in any way and most are directly contradicted by the affidavits of those who would have first-hand knowledge of the incidents in question. In sum, none of Scotto's "evidence" is sufficient to defeat the non-government defendants' motion for summary judgment.

### CONCLUSION

The district court's judgment is affirmed insofar as it dismissed Scotto's claims against defendants Forman and Wegman and granted the summary judgment motion of defendants Barbara Mei, O'Rorke, and Skadden Arps. The district court's judgment is vacated insofar as it dismissed Scotto's claims against Almenas, and the case is remanded for further proceedings as to him. On remand, the district court should reconsider its decision to decline to exercise supplemental jurisdiction over Scotto's state law claims against Almenas in light of our decision reinstating the federal claims against him.