**John CASSABOON, Jr. and Barbara Ann Cassaboon, Plaintiffs,**

**v.**

**TOWN OF SOMERS, Stephen and Marie Danko, Defendants.**

**No. 03 CIV. 7939(CM).**

United States District Court,
S.D. New York.

March 4, 2005.

David O. Wright, Yorktown Heights, NY, for Plaintiffs.

Cynthia Dolan, George S. Hodges, Boeggeman, George, Hodges & Corde, P.C., Jonathan Lovett, Lovett & Gould, White Plains, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Stephen and Marie Danko and their children reside at 9 Tomahawk Street, Yorktown Heights, New York. Shortly after the Dankos moved into their home, the well supplying potable water to their residence ran dry. The Dankos tried to jury rig a solution by running a hose from their neighbor's house to their well. But the hose froze over the winter.

The Dankos met with Adam Smith, the Water Supervisor of the Town of Somers, to discuss the possibility of hooking their house up to the Town's water supply. On December 31, 2001, Stephen Danko applied, on behalf of him and his wife, for a permit to connect their house to the water supply provided by the Town of Somers Amawalk–Heights Water District. Because the Dankos did not live in the Water District, they applied for an out-of-district permit.

Smith recommended that the permit be granted, conditioned on the Dankos' abiding by certain conditions, including obtaining all permits and easements needed to access the Somers water supply.

The Town Board met on January 17, 2002 and adopted the following resolution:

RESOLVED that the Town Board does hereby approve of out of district water connection to the Amawalk Heights Water District for Stephen Danko, 9 Tomahawk Street, Section 36.08, Block 1, Lot 43, with the proviso that the Town Board looks at each application as it becomes before the Board. [sic]

Danko began excavation and construction of the water line in the early spring of 2002. The line of necessity ran across a 50 foot unimproved right-of-way adjacent to the parcel owned by the Dankos. The right-of-way appears on the survey of the Dankos property as a portion of an unimproved but mapped street, Lakeview Terrace. There was no way to hook the Dankos up to Somers Town water except by running the pipe over this right-of-way.

The Cassaboons own two parcels of land on either side of the "Lakeview Terrace" right of way. They allege that, by operation of law, they were also the owners of the right-of-way. Specifically, they contend that New York's Highway Law, Section 205(1) provides that a municipality abandons a "paper road" (like Lakeview Terrace) within six years of the road's dedication to the use of the public if it is not in fact actively used as a road. The record shows that Lakeview Terrace was dedicated to the use of the public and laid

out around 1929. The Somers Town Supervisor concedes that the Town has no interest in the Lakeview Terrace right of way, and in 1999, the former owners of the Dankos' lot signed a release (the Rausch Release), duly filed with the Westchester County Clerk, in which they released any interest they might have had in the right of way in favor of the Cassaboons. It does not appear that any party disputes the Cassaboons' ownership of the right of way, although the only publicly-filed document that even arguably evidences their ownership appears to be the aforementioned Rausch Release.

Apparently, neither of the two parcels adjacent to the right of way is large enough to develop, but if the two parcels are combined—and of course the intervening fifty feet of land is necessary to combine them—the Cassaboons could develop the properties. So the land is of critical value to them.

It is undisputed that the Town did not give the Cassaboons notice of the proposed action of January 17, 2002, and did not direct the Dankos to do so either.

Although it is also undisputed that the Dankos openly and notoriously began excavation on the right-of-way in the early spring of 2002, the Cassaboons (who live in Clinton Corners, not in Somers) claim that they first learned about the Dankos incursion on their property in the summer of 2002, some seven months after the Somers Town Board adopted the resolution giving the Dankos access to Town water, and beyond the period for bringing an action pursuant to Article 78 of New York's Civil Practice Law and Rules. Because the Cassaboons believe that they have been deprived of over $100,000 in terms of the development potential of the lot, they

bring this action against the Town and the Dankos.

The federal claims they assert are:

1. By failing to give them notice of the meeting, the Town deprived them of their right to procedural due process, in violation of the Fourteenth Amendment to the United States Constitution.

2. By failing to give them notice of the meeting and by voting to approve the Dankos' application, the Town deprived them of their right to substantive due process, in violation of the Fourteenth Amendment to the United States Constitution.

3. By approving the Dankos' application, which necessarily meant that the Dankos would install a water pipe on their property, the Town "took" the Cassaboons' property without compensation, in violation of the Fifth Amendment to the United States Constitution.

4. By approving the Dankos' application, the Town retaliated against the Cassaboons for a prior exercise of their First Amendment rights (the Cassaboons had apparently filed some sort of Notice of Claim against the Town of Somers on a prior occasion).[1]

5. The Dankos, although private parties, are liable with the Town for the above-cited actions because they acted in concert with the Town by "persuading the Town" to grant their application.

Additionally, the Cassaboons assert several pendent claims, including a claim for trespass and a claim for compensation under New York's "de facto condemnation" procedure.

All parties have moved for summary judgment. The Dankos oppose the Cassaboons' motion, alleging that if their motion is not granted, disputed issues of fact exist

---

1. It is not clear whether the retaliation claim is even part of this case any more; no party discussed its merits in the briefs on the cross-motions for summary judgment.

that preclude the granting of the Cassaboons' motion.

## DISCUSSION

### 1. The Standards for Summary Judgment

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Once the motion for summary judgment is properly made, the burden shifts to the non-moving party which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)). Because the District Court must determine "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved . . . in favor of either party," *id.* at 250, 106 S.Ct. at 2511, the non-moving party, in order to defeat the motion, must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249, 106 S.Ct. at 2510 (citations omitted). While the Court must view the record "in the light most favorable to the non-moving party," *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir.1989) (citations omitted), and "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) (citations omitted), the non-moving party nevertheless "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

### 2. Somers' Motion for Summary Judgment

The Town of Somers moves for summary judgment on all claims asserted against it. The motion is granted.

All of plaintiffs' claims against the Town, both State and federal, are predicated on a fallacy. The fallacy is that, by

passing the resolution authorizing the Dankos to connect their home to the Town water supply—which could only be accessed by crossing the Cassaboons' land— the Town "took" the Cassaboons' land. But the Town did no such thing. The Town gave the Dankos permission to use Somers' water, and nothing more. It was up to the Dankos to take advantage of the permission they had been given by hooking their house up to the water supply. The burden lay with the Dankos to get a pipe from their house to the Town water supply. Nothing in the resolution passed by the Town of Somers gave the Dankos permission to trespass on anyone else's land in order to lay that pipe; if the Cassaboons chose not to treat with the Dankos, then the Town Board resolution was not worth the paper it was written on. And the Dankos acted at their peril by not ascertaining who actually owned the right-of-way and negotiating with the real owners before they starting laying the pipe.

Because the Town Board did not authorize the Dankos to trespass on anyone's property, there was no taking—either express or by implication (i.e., no de facto condemnation)—and there was no violation of any due process right the Cassaboons had to be notified prior to the taking of any action by the Town affecting their property rights.

The fact that nothing done by the Town authorized any trespass on the Cassaboons' property—that there was no deprivation of their property rights—appears to have escaped the parties. Instead, they have briefed a variety of extraneous issues,

from the duty owed (or not owed) by the Town to the Cassaboons to the ripeness of a Fifth Amendment takings claim. But the fact remains, a takings claim, whether ripe or not, requires a taking, and a substantive due process claim (in addition to being highly disfavored) or a First Amendment retaliation claim [2] requires the deprivation of a liberty or property interest. Here, there was no state taking or deprivation. There appears to have been a private trespass.

■ The only federal claim that is arguably worth discussion is the claim that plaintiffs were deprived of procedural due process because they were not given notice of the meeting at which the issue of the Dankos' request was discussed. For reasons that I find unfathomable, Somers fails to grasp the essence of this claim. The Cassaboons claim that they were entitled to notice before the Town took any action that would affect their property interests. They indisputably did not get notice, and the reason why is immaterial.[3] If notice was constitutionally required, then they were deprived of their right to due process.

But because the resolution passed by the Town did not deprive plaintiffs of any interest in their property, the Cassaboons were not constitutionally entitled to notice.

■ The Constitution requires notice and a hearing before the state may deprive a person of his property. *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). But the *sine qua non* of the constitutional notice require-

---

2. Again, the retaliation claim may not even be part of this case any more (*see supra,* at n. 1), but if the parties have not already stipulated to dismiss it, I dismiss it.

3. It appears from the record that notice was not given because all parties were under the impression that the Town owned the right-of-

way. Plaintiffs contend that the Dankos knew otherwise because the Dankos' lawyer had told them of the Cassaboons' interest in the right-of-way when they bought their house. That issue will doubtless be highly relevant in the Cassaboons' action against the Dankos for trespass.

ment is that a private interest will be affected by some official action. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In this case, the only interest of the Cassaboons that was necessarily affected by virtue of the Town Board's resolution was their interest in making some money from the Dankos, since the Dankos could not run the pipe across the right-of way without plaintiffs' permission. No matter how one tries to contort the Town Board's resolution, it is impossible to conclude that the Town did anything to plaintiffs or their property— except open up to the Cassaboons the enticing possibility of making a good deal of money by charging their neighbors for the privilege of acting on the permission given them to hook up to the Town's water supply.

Of course, it would have been advisable for the Town to have given the Cassaboons notice of the Dankos' application. It seems that, in order to take advantage of their hard-won right, the Dankos had no choice but to cross the Cassaboons' property. It is customary, here in the suburbs, for local government to require permit applicants to notify their neighbors of the application, so that the neighbors can come in and voice whatever opinion they might have about the matter. It happens when people want to build an addition or put up a fence—actions that do not affect the property rights of the neighbors, but that might affect their sensibilities. If such a procedure had been followed in this case— and it could have been followed even if everyone was under a misimpression about ownership of the right-of-way, because the Cassaboons own two lots in the immediate vicinity of the Dankos' property—any misimpression about ownership could have been cleared up before the pipe was laid. But because the Town did not authorize the Dankos to trespass on the Cassaboons' property, such neighborly notice, while advisable, was not constitutionally required.

Because the Cassaboons were not constitutionally required to receive notice of the Town's proposed action, it is not necessary to reach the Town's argument that the State provided for adequate post-deprivation remedies, in the form of an Article 78 proceeding, or the Cassaboons' response, which is that, because they got no notice of the meeting at which the resolution was passed, they did not learn of the Town's resolution until the four month statute of limitations on such an action had passed.

Not only must all the federal claims against the Town be dismissed, but the State law claims for trespass and de facto condemnation must also be dismissed. Putting to one side any issue about the Cassaboon's compliance with the General Municipal Law, no trespass lies against the Town because the Town did not go onto the Cassaboons' land—the Dankos did— and the Town did not authorize the Dankos to trespass on the Cassaboons' land— they only authorized the Dankos to hook up to the Town water supply (assuming they could get to it). And no action for de facto condemnation lies because the Town did not take the Cassaboons' land.

All claims, state and federal, are dismissed with prejudice as against the Town of Somers.[4]

4. The claim for declaratory judgment against Somers is either moot or never satisfied the case in controversy requirement to begin with. Plaintiffs apparently anticipated that Somers would argue that they did not own the right-of-way. But Somers does not claim ownership of the right-of-way. Indeed, it disclaimed ownership in the parcel during pretrial discovery. So there is no dispute between the Town and the Cassaboons that needs to be resolved. Furthermore, the "declaratory judgment" claim is not really a

### 3. The Dankos' Motion for Summary Judgment Dismissing the Federal Claims is Granted

Obviously, the federal claims against the Dankos must be dismissed—as must the claim under New York law for a "de facto condemnation" (which would not lie against the Dankos in any event)—because, as explained above, nothing done by the Town of Somers affected the Cassaboons' property rights in the right-of-way. Because no federal claims lie against the Town, no federal claims lie against the private actors who allegedly acted in concert with the Town to deprive the plaintiffs of their rights.

■ But even if there were some merit to the federal claims against the Town, there would be no merit to the claims against the Dankos. The Dankos are private persons. All they did "in concert" with the Town of Somers was apply for an out-of-district water permit. They may indeed have trespassed on the Cassaboons' property, and they may be liable for that trespass. But the federal claims asserted in this action against them must be denied, because they are not state actors and they did not act in concert with state actors within the meaning of *Adickes v. Kress*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The Cassaboons' conclusory allegation that the Dankos "acted in concert" with the Town is unsupported by any evidence of conspiracy or concerted action. And indeed, the very items cited by the Cassaboons as the "in concert" actions—filing an applications for out of district water and inducing (i.e., persuading) the Town Board to grant his application (See Plaintiff's Memorandum in Support of Motion for Summary Judgment at 13)—are the actions of a private person who asks a boon from a local governmental entity. A person who applies for a Town permit and gets it does not thereby become a state actor.

Plaintiffs' artless argument may in fact be an effort to wedge the Dankos into the position of the Eagle Coffee Shop in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In that case, the defendant Authority, a public enterprise, was held liable for the actions of its tenant, Eagle, which refused to serve blacks. *Burton* indicates that ostensibly private action may be deemed public action in certain circumstances where there is a sufficient intertwining of public and private function (in that case, the coffee shop was located in a public building, provided food service to persons who were engaged in public business, was funded in part with public money, paid rent to the state out of the funds generated by its business, and was provided with free public parking for its customers). *Burton* does not hold that purely private actors who ask for some governmental benefit thereby become so intertwined with the government that they can be held liable as state actors.

Here, the benefit sought by the Dankos was not the sort of benefit that linked them inseparably to the State because it benefited the State, as was true in *Burton*. (Indeed, the Town Board was advised that it would end up costing the Town money to grant the permit, because Somers could not charge the Dankos, through taxation, for any capital improvements that might be necessary to the Town water supply). Therefore, *Burton* is of no moment.

The federal claims and the de facto condemnation claim against the Dankos are dismissed with prejudice.

---

claim at all, but rather, a factual finding necessary for plaintiffs to prevail on their trespass claim. It is, accordingly, dismissed as against the Town.

Assuming arguendo that the Cassaboons own the right-of-way, it appears to this Court that they have an excellent claim against the Dankos for trespass. They can pursue that claim in the court in which it should have been brought in the first place—the New York State Supreme Court. This court need not exercise supplemental jurisdiction over the pendent state law claim, even where, as here, I have disposed of some of the state law claims asserted. I decline to reward the Cassaboons for making a federal case out of a decidedly local issue. The remaining non-federal claims against the Dankos (other than the de facto condemnation claim) are dismissed, without prejudice to their reinstatement in an action in an appropriate court.

The Clerk of the Court is directed to close the file.