**CSC HOLDINGS, INC., Plaintiff,**

v.

**Mario ALBERTO Defendant.**

**No. 05 CV 697(CMMDF).**

United States District Court,
S.D. New York.

July 25, 2005.

Patrick Joseph Sullivan, Lefkowitz, Louis & Sullivan, L.L.P., Jericho, NY, for Plaintiff.

## MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiff Cablevision Systems Corporation ("Cablevision") brought this action pursuant to the Communications Act of 1934, 47 U.S.C. §§ 553(a)(1) and 605(a), alleging that Defendant intercepted its Premium and Pay-per-view programming services with the use of a "pirate" cable television decoding device. Plaintiff seeks statutory damages, a permanent injunction, and attorneys' fees and costs. For the reasons set forth below, the Court holds that Plaintiff is entitled to summary judgment on all claims.

## BACKGROUND:

### Statement of Facts

Except where noted, the following facts are undisputed:

Cablevision is a cable television operator that has been awarded franchises by municipalities in Westchester County that authorize it to construct, operate, and maintain cable television systems in parts of New York State, including the part of Westchester County in which Defendant resided at all relevant times. At varying prices, Cablevision offers different levels of programming services to residential customers ranging from "Basic" programming to "Premium" programming, as well as Pay-per-view broadcast events. Cablevision subscribers pay a monthly fee based on the level of programming services selected, and Pay-per-view broadcasts are billed in addition to these monthly fees.

In order to secure its cable services, Cablevision encodes or scrambles the Premium and Pay-per-view signals it transmits and provides subscribers with a converter programmed to descramble only the services for which they pay. Pirate decoding devices designed to descramble all scrambled cable services, however, make it possible to view Cablevision's Premium and Pay-per-view channels without payment to or authorization from Cablevision. In the area where Defendant resides, Cablevision subscribers who purchase the lowest level of service, Basic service, have a filter attached to their cable lines by Cablevision which prevents decoding devices from descrambling any scrambled programs. Subscribers to Cablevision's Family Cable service, the second-lowest level of service, however, are able to utilize pirate decoding devices in order to receive the signals from Premium service and Pay-per-view events.

In an affidavit submitted in support of Plaintiff's Motion for Summary Judgment, Donald Kempton, Manager of Investigations in Cablevision's security department, states that there is no legitimate reason why Cablevision's customers would need to purchase a cable descrambling device from a third-party vendor. Additionally, Mr. Kempton explains that the sole purpose of such a device is to enable users to receive scrambled programming services to which they are not authorized, without payment. (Kempton Aff. ¶¶ 22–23.)

In the course of an action commenced against Explorer Electronics, Inc. ("Explorer"), Plaintiff obtained sales records showing that Defendant purchased a pirate decoding device from Explorer, and a letter from Defendant to Explorer regarding the device. Dated January 20, 2003, the letter states that Defendant purchased the decoding device on June 3, 2002, and that it had recently begun to malfunction. The letter states in pertinent part that, "The signal is poor on most channels and channels 80–94 do not work and they used to." (Pl.'s L.R. 56.1 Statement, ¶ 22.) The letter indicates that Defendant enclosed the device, requesting that it be either repaired or replaced. In his deposition testimony, Defendant stated that it took him some time to return the malfunctioning device to Explorer because the company changed its telephone number and he could not contact them. Therefore, Defendant claims the device functioned properly for less than the seven months during which he possessed it.

In the area where Defendant resides, channels eighty through ninety-four correspond to only Premium and Pay-per-view services. While Defendant was a paying Cablevision customer from 1991 until February 15, 2005, he subscribed only to the Family Cable level of service and never purchased a Pay-per-view event. Cablevision's Family Cable level does not entitle subscribers to any Premium or Pay-per-view services such as those between channels eighty and ninety-four.

In a letter dated April 15, 2004, a Cablevision representative informed Defendant that Cablevision had evidence regarding Defendant's purchase of the cable decoder. In his response to this letter on April 30, 2004, Defendant denied ever using a cable decoder and wrote, "I don't need to use a decoder because I subscribe and pay $46.29 monthly for 'Family Cable' from you[,] remember?" (Pl.'s L.R. 56.1 Statement, ¶ 48.)

Defendant eventually admitted to purchasing and using the device from Explorer, but initially denied using it to receive any of Cablevision's services without payment. When confronted with his letter to Explorer regarding channels eighty through ninety-four during his deposition, Defendant admitted to having viewed the channels (as he would have to have done in order to know that they used to work, but no longer did). Defendant also admitted that he knew the Family Cable level of service to which he subscribed did not include any Premium or Pay-per-view channels and that his receiving those channels was a form of stealing from Cablevision. (Pl.'s L.R. 56.1 Statement, ¶¶ 38–45.)

On May 12, 2005, Defendant received a copy of his deposition transcript and was notified that he had until June 12, 2005, to review, sign, notarize, and return the executed transcript to Plaintiff's counsel. On June 3, 2005, within the thirty days allotted, Defendant returned the transcript with numerous changes entered directly on the deposition. Defendant's revisions stated that, while he viewed channels eighty through ninety-four at some point, it was only "during [the] set up of [the device] in order to 'lock out' those channels so they could not be viewed." Defendant crossed

out his "Yes" response to whether his receipt of the channels was a form of stealing from Cablevision, and wrote instead, "No, because I never watched them." Defendant crossed out two additional "Yes" responses to questions regarding whether he received some financial benefit through the use of the device by accessing Premium and Pay-per-view services without payment, and wrote "No," instead. (Kempton Aff. Ex. B at 110–112.) [1]

### Procedural History

Cablevision commenced this action on January 20, 2005, pursuant to 47 U.S.C. §§ 553(a)(1) and 605(a), alleging that Defendant intercepted its scrambled Premium and Pay-per-view programming services with the use of a fully descrambling pirate cable television decoding device. Defendant did not file an answer to Plaintiff's complaint, and instead of moving for a default judgment, Plaintiff moved for summary judgment.

Acting *pro se*, Defendant submitted a one-page Statement of Facts in response to Plaintiff's Local Rule 56.1 Statement and Motion for Summary Judgment. Defendant's statement claims that Plaintiff

"[put] words in [his] mouth" and "distort[ed] his answers in a recent deposition." Defendant also claims that he blocked access to all channels that were not part of his subscription and that he never "intended" to view or access those channels. Defendant argues that he purchased the decoding device so as to view channels twenty and higher, which his video monitor was incapable of doing, and that during his initial years of Cablevision service, he rented a television tuner directly from Cablevision for the same purpose. Defendant also claims that, if he were attempting to steal cable services, he would have subscribed to Cablevision's Basic service instead of the higher-priced Family Cable service. (Def.'s Statement of Facts ¶¶ 2–4.)

### DISCUSSION

#### 1. Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted if there is no genuine issue of material fact as to the nonmoving party's claim. In deciding whether a genuine issue of material fact

---

1. Defendant is entitled to make changes to his deposition testimony within the allotted timeframe of thirty days under Rule 30(e) of the Federal Rules of Civil Procedure. The Rule states as follows:

   If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed. Fed. R.Civ.P. 30(e).

   While Defendant's edits must be admitted, however, "[he] is not entitled to have his altered answers take the place of the original ones. His original deposition answers constitute the admissions of a party, and as such form part of the record evidence." *Podell v. Citicorp Diners Club, Inc.*, 914 F.Supp. 1025, 1034 (S.D.N.Y.1996)(citing *Usiak v. New York Tank Barge Company*, 299 F.2d 808, 810 (2d Cir.1962)). The *Podell* court went on to say that, "Rule 30(e) allows a deponent to make changes in his deposition 'even if the changes contradict the original answers or even if the deponent's reasons for making the changes are unconvincing.'" 914 F.Supp. at 1034 (quoting *Lugtig v. Thomas*, 89 F.R.D. 639, 641 (N.D.Ill. April 2, 1981)). Hence, the Court must consider both Defendant's original deposition testimony as well as the edits to that testimony. *See Usiak*, 299 F.2d at 810 (stating that, "Any out-of-court statement by a party is an admission").

exists, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## 2. *The Communications Act Claims*

Plaintiff alleges that it is entitled to summary judgment because all of Defendant's statements taken together show that he admitted he (1) purchased a pirate cable decoding device, (2) connected that device to his cable system without authorization from Cablevision, and (3) viewed channels eighty through ninety-four, for which he admittedly did not pay or have authorization, at least when he was allegedly attempting to "block" access to those channels.

Section 553(a)(1) provides in pertinent part that, "No person shall intercept or receive ... any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Similarly, Section 605(a) provides that, "No person not being entitled thereto shall receive ... any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit." 47 U.S.C. § 605(a). Courts within this circuit have

held that a guilty party is in violation of both statutes. *International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir.1996); *Cablevision Systems New York City Corp. v. Leath*, 2002 WL 1751343, *3 (S.D.N.Y. July 26, 2002). In *Leath*, the court reasoned that:

Cablevision receives its signals, including those for premium and pay-per-view service, from orbiting satellites and radio signals, prior to transmitting the signals through coaxial cable. Thus, Cablevision's rights to the signals are protected by section 553, concerning cable system communications, and section 605, concerning the radio and satellite communications. Therefore, when Defendant installed the pirate-box and received all of Cablevision's signals, including premium and pay-per-view signals, in an unscrambled mode without Cablevision's authorization, [Defendant] violated both sections 553 and 605. (internal citations omitted).

As discussed above, Defendant was not authorized by Cablevision or by law to intercept or receive for his own benefit Cablevision's signals sent to channels eighty to ninety-four. As the court said in *CSC Holdings, Inc. v. Berube*, No. 01–1650 at 9 (E.D.N.Y. July 7, 2004), "[Defendant's] testimony as to his limited enjoyment of the stolen signals does not alter the uncontroverted fact that he viewed unauthorized signals on a pirate cable box." Sections 553(a)(1) and 605(a) do not include an element of intent in order to prove a violation. Defendant's arguments that he purchased the decoder so as to view channels above twenty to which he subscribed, and that he had no intention of stealing cable when he purchased and installed the device, are irrelevant as well as highly suspicious in light of his letter to Explorer.

It is undisputed that on at least one occasion Defendant *intercepted* Cablevision's communications without authorization. Plaintiff has therefore proved all the elements required to prove a violation of sections 553(a)(1) and 605(a).

CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. Solely with regard to the statutory damages, permanent injunction, and attorneys' fees and costs, the above-captioned action is respectfully referred to United States Magistrate Judge Mark D. Fox for a Report and Recommendation. *See* 28 U.S.C. § 636(b)(3).

This constitutes the decision and order of this Court.